## S96A0682. LINARES v. THE STATE.
## S96A0683. QUINTANA v. THE STATE.
(471 SE2d 208)

FLETCHER, Presiding Justice.

Juan Manuel Rivas Linares and Sarafin Quintana were convicted at a joint trial of the murder of their roommate, Carlos Velasquez, and sentenced to life imprisonment.[1] After a pretrial hearing, the trial court ruled that Linares made a statement to police after invoking his right to counsel and the state could introduce that custodial statement solely for impeachment purposes. Linares alleges that the trial court's ruling violated his constitutional right to testify on his own behalf. Although we agree with Linares that his statement was involuntary and could not be introduced to impeach him, we conclude that he has failed to preserve the issue of the denial of his constitutional right to testify for review on appeal. Finding no reversible error, we affirm the convictions of both defendants.

1. Two interpreters were used at trial to translate questions and testimony for the Spanish-speaking defendants. The evidence presented shows that Velasquez was found lying face down in a ditch next to a dirt road in Toombs County. Velasquez died from hemorrhaging around the brain after receiving injuries to his head, neck, chest, and abdomen from a blunt object and a sharp object. A bloodied hammer and broken knife were found near his body.

Witnesses testified that Velasquez had been drinking with his roommates after work one Friday when Velasquez and Quintana pulled knives and threatened each other. Co-defendant Raimundo Almaguer, who pleaded guilty to voluntary manslaughter, testified that later that night Linares, Quintana, and he were driving Velasquez to Reidsville when they stopped their van on a county road and Velasquez got out to go to the bathroom. Almaguer testified that Quintana attacked and fought Velasquez alone for eight to ten minutes while Linares and Almaguer remained in the van. In two police statements, Almaguer had said that he saw and heard both Quintana and Linares beating Velasquez outside the van. Although Quintana testified at trial that he was not involved in the beating, he had told police in a statement read at trial that he had assaulted Velasquez with a knife, Linares used a hammer, and Almaguer used his fists and feet to assault Velasquez. After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a ra-

---

[1] The crime occurred on March 4, 1994, and a grand jury indicted Linares and Quintana on May 12, 1994. A jury found both men guilty and the trial court sentenced them on October 3, 1994. Each defendant filed a motion for a new trial on November 1, 1994. Both motions were denied on December 6, 1995. Linares filed a notice of appeal on December 18, 1995, and Quintana filed his notice on December 20, 1995. Both cases were docketed on January 18, 1996, and submitted for decision on briefs on March 11, 1996.

tional trier of fact could have found both Quintana and Linares guilty of murder.[2]

2. Under the Fifth and Fourteenth Amendments of the United States Constitution, a criminal defendant has the right to counsel during questioning while in police custody.[3] When an accused invokes this right, the state cannot establish a valid waiver by showing only that the suspect responded to further police-initiated custodial interrogation.[4] Instead, the interrogation must end until counsel is made available, unless the accused initiates further conversation with police.[5] Although a statement obtained in violation of *Miranda* may not be used in the prosecution's case-in-chief, it may be used to impeach the defendant's credibility if its trustworthiness meets legal standards.[6] This test means that a court must find that the statement is voluntary under traditional due process analysis.[7] For many years, the Supreme Court followed the rule that "*any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law."[8] More recently, however, it has applied the harmless error analysis to the admission of involuntary confessions.[9]

In determining whether the state has proven that the statement was voluntary, the trial court must consider the totality of the circumstances.[10] The issue presents a mixed question of fact and law.[11] On appeal, we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous, but independently apply the legal principles to the facts.[12]

At the pretrial hearing,[13] the lead GBI investigator testified that Linares asked for an attorney after police advised him in Spanish of his rights under *Miranda v. Arizona*. The GBI agent stopped the in-

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Miranda v. Arizona*, 384 U. S. 436, 470 (86 SC 1602, 16 LE2d 694) (1966).

[4] *Edwards v. Arizona*, 451 U. S. 477, 484 (101 SC 1880, 68 LE2d 378) (1981).

[5] Id. at 484-485; *Roper v. State*, 258 Ga. 847 (375 SE2d 600), cert. denied, 493 U. S. 923 (110 SC 290, 107 LE2d 270) (1989).

[6] *Harris v. New York*, 401 U. S. 222, 224 (91 SC 643, 28 LE2d 1) (1971).

[7] *Oregon v. Elstad*, 470 U. S. 298, 304 (105 SC 1285, 84 LE2d 222) (1985); see OCGA § 24-3-50 (permitting admission of confessions only if "made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury").

[8] *Mincey v. Arizona*, 437 U. S. 385, 398 (98 SC 2408, 57 LE2d 290) (1978); see also *New Jersey v. Portash*, 440 U. S. 450, 459 (99 SC 1292, 59 LE2d 501) (1979) (holding "a person's testimony . . . under a grant of immunity cannot constitutionally be used to impeach him when he is a defendant in a later criminal trial"); *Fain v. State*, 165 Ga. App. 188 (300 SE2d 197) (1983).

[9] *Arizona v. Fulminante*, 499 U. S. 279, 306-312 (111 SC 1246, 113 LE2d 302) (1991).

[10] *Gates v. State*, 244 Ga. 587, 591 (261 SE2d 349) (1979), cert. denied, 445 U. S. 938 (100 SC 1332, 63 LE2d 772) (1980).

[11] See *State v. McBride*, 261 Ga. 60, 65-66 (401 SE2d 484) (1991) (Hunt, J., concurring specially).

[12] *Espinoza v. State*, 265 Ga. 171 (454 SE2d 765) (1995).

[13] See *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

terview, but almost immediately started questioning Linares again. The agent testified that he initially interrogated Linares as a suspect, but decided to interview him as a witness to the crime after Linares asserted his right to counsel. Police initiated both conversations with the help of an interpreter. The second interview began within five minutes of the first one without anyone leaving the room or obtaining an attorney for Linares. At the time, Linares was upset, crying, and shaking. The agent testified that he told Linares that "any information that he may give could not be used against him." Linares then confessed to beating Velasquez along with Quintana and Almaguer.

Applying the law to these undisputed facts, we hold that Linares' statement was not voluntary under the totality of the circumstances. There is no evidence that the suspect at any time initiated a conversation with police. The GBI agent admitted that he continued questioning Linares after Linares asserted his right to counsel. There was no break in the interrogation of Linares as a "suspect" and the questioning of him as a "witness." Indeed, the interpreter remembered only one continuous interview of Linares, making it doubtful that the distinction between the two interviews was communicated to Linares. Most important, the agent promised Linares that nothing he said would be used against him. Because we conclude that the statement was involuntary, the trial court erred in ruling that it could be used at trial to impeach Linares.

3. As a result of that adverse ruling, Linares did not testify and the state did not introduce the statement. Therefore, Linares does not challenge the erroneous admission of his involuntary statement. Instead, he contends that he was denied his constitutional right to testify based on the trial court's decision that the statement would be admissible to impeach him.

We have never previously considered whether a trial court's ruling that an involuntary statement could be used for impeachment violates a defendant's right to testify under the Fifth and Sixth Amendments of the United States Constitution.[14] We need not reach that issue in this case because Linares has not shown that the ruling admitting his statement was the primary factor in his decision not to testify.[15] When questioned by the trial court, Linares indicated that he did not wish to testify without giving any reason. His attorney cited two adverse evidentiary rulings as the reasons why Linares did not take the witness stand. Since the record fails to establish that Linares would have testified in his own defense if the trial court had

---

[14] See *Rock v. Arkansas*, 483 U. S. 44 (107 SC 2704, 97 LE2d 37) (1987); *Mobley v. State*, 264 Ga. 854 (452 SE2d 500) (1995).

[15] Cf. *People v. Washington*, 413 NE2d 170, 172 (Ill. App. 1980) (relying on defendant's affidavit stating why he would not testify).

ruled his statement was inadmissible, any review of his constitutional claim would be speculative.[16]

4. Both Linares and Quintana challenge the trial court's failure to sever their trials. In a capital felony trial where the state waives the death penalty, the trial court has the discretion to grant a severance motion.[17] The trial court should consider the likelihood of confusion of evidence and the law, the possibility that evidence against one defendant may be considered against another defendant, and the presence of antagonistic defenses.[18] On appeal, the defendant must show clear prejudice.[19]

Reviewing these factors, we conclude that the trial court did not abuse its discretion in denying both defendants' motions to sever. Although the use of interpreters was confusing and the two defendants had antagonistic defenses, neither Linares nor Quintana has proven harm from the joint trial. First, the confusion caused by using interpreters would have been present at a severed trial. Second, the juror's post-trial statements that the jury was confused is insufficient to impeach the jury verdict.[20] Each juror was polled immediately after returning the verdict and stated support for the guilty verdict. Third, Quintana cannot show that a separate trial would have caused Almaguer to testify differently or Linares to testify and exonerate Quintana. Finally, there was sufficient evidence to convict each defendant as a party to the crime of murder. Even if, as two defendants testified, one person beat Velasquez with both the hammer and knife, the other two men sat inside the van and listened to the fight without intervening, left a bloodied Velasquez dying in the ditch, and failed to summon help after returning home.

5. Linares sought to introduce the testimony of one of the court-appointed interpreters as a linguistics expert. The trial court refused to allow the testimony, citing the potential conflict in having the court's interpreter testify on the defendant's behalf. We hold that the trial court did not abuse its discretion in denying Linares' motion to call the court-appointed interpreter as an expert witness. Although the proposed testimony was relevant, other qualified interpreters not associated with that trial could have testified about the skills needed to interpret properly, as Linares acknowledged at trial.

---

[16] See *New Jersey v. Portash*, 440 U. S. at 463-468 (Blackmun, J., dissenting) (discussing problems in adjudicating abstract issues); see also *Luce v. United States*, 469 U. S. 38 (105 SC 460, 83 LE2d 443) (1984) (holding that defendant must testify to obtain review of trial court's in limine ruling on the admissibility of a prior conviction for impeachment under Fed. R. Evid. 609).

[17] See OCGA § 17-8-4.

[18] *Cain v. State*, 235 Ga. 128 (218 SE2d 856) (1975).

[19] Id.

[20] OCGA § 17-9-41.

816

6. In addition, Quintana alleges that the trial court erred in failing to provide each defendant with a personal interpreter and Linares alleges that the trial court erred in admitting certain photographs, allowing the state to impeach its own witness, and failing to grant a mistrial based on a violation of *Bruton v. United States*.[21] We have reviewed these enumerations and found no error.

*Judgment affirmed. All the Justices concur, except Sears, J., who concurs in the judgment only as to Division 3.*

DECIDED MAY 28, 1996 —
RECONSIDERATION DENIED JUNE 25, 1996.

*Salter & Shook, Mitchell M. Shook,* for appellant (case no. S96A0682).

*Thomas J. O'Donnell, Jr.,* for appellant (case no. S96A0683).

*Richard A. Malone, District Attorney, S. Heyward Altman, Assistant District Attorney, Michael J. Bowers, Attorney General, Beth Attaway, Assistant Attorney General,* for appellee.

