## A98A0947. BRAY v. THE STATE.
### (505 SE2d 532)

SMITH, Judge.

Eugenia Bray was convicted by a jury of DUI, no proof of insurance, and violation of the open container law. Her motion for new trial as amended was denied, and she appeals. Bray's principal con-

tention is that the trial court erroneously refused to exclude her post-arrest statements. We find no reversible error and affirm.

Evidence presented at trial shows that Officer John Fox, an employee of the DeKalb County Department of Public Safety assigned to the local DUI Task Force, conducted a traffic stop involving Bray during the early morning hours of March 13, 1997. He stopped her car for failure to maintain lane and for a "tag light violation." While talking with Bray, Fox noticed an odor of alcohol about her and asked her to submit to field sobriety evaluations. After talking with Bray at length and performing the evaluations,[1] Fox concluded that Bray was less safe to drive and arrested her for DUI. The traffic stop, field evaluations, arrest, and conversation between Fox and Bray were captured on video and audio equipment used by Fox on the night of Bray's arrest.

Although Fox read Bray her implied consent rights after arresting her, he did not inform her of her *Miranda* rights, and a statement he made to Bray after arresting her is the subject of this appeal. The videotape introduced into evidence shows that just after Fox placed Bray under arrest, Bray stated that she would agree to perform an alco-sensor evaluation. Fox told her that blowing into the alco-sensor was irrelevant since he had already arrested her. Bray commented that she would do anything not to go to jail, and Fox replied, "I've already said the magic words. It's over with." Bray asked, "Why?" and Fox told her, *"[O]nce I've placed you under arrest, that's it. Everything that's said now unless I read you your Miranda rights is not even admissible in court. Anything we do right now is not admissible in court."* (Emphasis supplied.) With the exception of post-arrest statements made in response to direct questioning by Fox that were redacted from the videotape,[2] the trial court permitted the jury to view the entire videotape, concluding that other statements on the tape were merely spontaneous statements which were not the result of police interrogation. Bray claims that *all* post-arrest statements made by her should have been excluded because they were made in reliance on the emphasized portion of this conversation. She argues that other statements made by her were "inherently prejudicial," including her comments "that if she agreed to take the state administered blood test, it would show that she was 'DUI.' "

We first note that Fox should have read Bray her *Miranda* rights once she was arrested. See *State v. O'Donnell*, 225 Ga. App. 502, 503-

---

[1] Bray could not complete the alphabet and could not follow instructions when Fox administered the horizontal gaze nystagmus (HGN) evaluation.

[2] After Fox arrested Bray, he questioned her concerning the fact that her license had been restricted due to a hit and run accident. The court ruled that this portion of the videotape was inadmissible.

504 (484 SE2d 313) (1997). But *Miranda* warnings are not required for admission of all post-arrest statements; such warnings are necessary to admit statements made while a suspect is being interrogated while in custody. See, e.g., *McClendon v. State*, 201 Ga. App. 262, 264 (1) (b) (410 SE2d 760) (1991). And "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. . . . A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (Footnotes omitted; emphasis in original.) *Rhode Island v. Innis*, 446 U. S. 291, 301-302 (100 SC 1682, 64 LE2d 297) (1980).

In analyzing whether Fox's comment that nothing she said or did could be used against her elicited Bray's post-arrest statements, we note the context of the comment. It was made in response to Bray's statements that she would blow into the alco-sensor and that she would "do anything" not to go to jail. It appears Bray may have been trying at that point to initiate some action that could show that she was not driving under the influence of alcohol and that Fox, obviously and understandably frustrated by Bray's uncooperative behavior, tried to explain that her actions after arrest could not be used to help her in court. But whatever the reason for Fox's remark, such a comment that her statements could not be used against her could well elicit an incriminating response from a suspect. Confessions admitted after similar statements by police have been held to be involuntary or inadmissible against the confessor. See *Linares v. State*, 266 Ga. 812, 814 (2) (471 SE2d 208) (1996); *Porter v. State*, 143 Ga. App. 640, 642 (2) (239 SE2d 694) (1977) (physical precedent only). But even though Fox erroneously made such a statement to Bray, we cannot say that the court's refusal to suppress all post-arrest statements was reversible error.

In substance, with the exception of post-arrest comments redacted from the videotape, the statements made by Bray after arrest were the same as those made before arrest. Before Fox arrested Bray, she was talkative, repetitious, uncooperative, and at times acted confused. For example, although Bray performed field sobriety evaluations, she did so only after Fox asked her at least seven times whether she would submit to these evaluations. And several times during the conversation concerning the field sobriety tests,

Bray asked Fox to give her "a break." When Fox asked her questions, she often was silent, changed the subject, or answered him with other questions. Bray also expressed concern about going to jail. When Fox asked her to blow into an alco-sensor, she replied that she might go to jail if she did so. In addition, after Bray finally agreed to submit to field sobriety tests, she did not perform the "walk and turn" evaluation, telling Fox that the evaluation would be hard to do even if sober.

After Bray was arrested, she continued to be uncooperative. Fox read Bray's implied consent rights and asked whether she wished to submit to a state administered blood test, and she again replied by asking him to give her "a break." Just as Fox asked Bray several times whether she would submit to field sobriety evaluations, he asked her many times whether she desired to take the blood test. Again, as before her arrest, Bray answered Fox's questions either with silence or other repetitive questions. Also, several times after Fox asked Bray whether she wished to take the test, she stated that she did not know "what to say" and even asked Fox what she should do and expressed concern about going to jail. We note that before Bray refused the test, Fox twice told her that the results *would* be admissible in court. Bray twice asked Fox whether those results would "hurt" her case, and Fox acknowledged the "possibility" of such a result. After Fox asked Bray several times whether she wanted to submit to the blood test, Bray finally refused, stating that she "was going to jail anyway."

Bray's post-arrest statements were no more incriminating than those made before arrest. Although after arrest she expressed concern about going to jail and stated that taking the state-administered blood test could damage her case, she similarly stated before she was arrested that she might go to jail if she blew into the alco-sensor. Her pre-arrest statement that the walk and turn evaluation would be hard to do even if she were sober also was particularly incriminating. Bray's post-arrest statements were merely cumulative of those made before arrest and likely did not contribute to the verdict. Under these circumstances, admission of the post-arrest statements constituted harmless error. See generally *Hardin v. State*, 269 Ga. 1, 4 (2) (b) (494 SE2d 647) (1998).

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 7, 1998.

*Robert W. Chestney, Tracy M. Delgado*, for appellant.

*Ralph T. Bowden, Jr., Solicitor, W. Cliff Howard, Margaret A. Dunaway, Assistant Solicitors*, for appellee.