S98A0862. ISAAC v. THE STATE.
(505 SE2d 480)

THOMPSON, Justice.

Anterian Isaac was convicted of felony murder, aggravated assault, and possession of a firearm during the commission of a felony, in connection with the shooting death of Michael Wilson.[1] He was tried with his co-defendants, Antonio Render[2] and Christie Blackburn.[3] On appeal, he asserts, inter alia, that the trial court erred in (1) refusing to permit him to cross-examine a state's witness concerning an arrest for shoplifting and (2) failing to sever defendants.

1. Viewing the evidence in a light favorable to the State, as we are bound to do, *Willis v. State*, 263 Ga. 597, 598 (436 SE2d 204) (1993), we find the following: Blackburn and her sisters, Stacey and Brandi, lived in an apartment with Dianna Freeman. On the night in question, Isaac, Render and Blackburn were partying in Freeman's apartment when they decided to rob someone. Blackburn retrieved Freeman's gun and she left the apartment with Isaac and Render. As they left, they told Stacey that they were going for a "walk."

The trio encountered Wilson as he was walking along a path near the complex. They made a demand for money. When Wilson, who was homeless, said he had no money, he was shot in the shoul-

---

[1] The crimes occurred on August 19, 1992, and Isaac was indicted on January 7, 1994. Trial commenced on March 15, 1994, and the jury returned its verdict on March 25, 1994. Isaac was sentenced on April 18, 1994, to life imprisonment for felony murder and five years imprisonment for possession of a firearm. Isaac's timely filed motion for new trial was amended on September 12, 1997, and denied on September 19, 1997. Isaac filed a notice of appeal on October 20, 1997. The case was docketed in this Court on March 6, 1998, and submitted for decision on briefs on April 27, 1998.

[2] See *Render v. State*, 266 Ga. 490 (467 SE2d 528) (1996).

[3] See *Blackburn v. State*, 266 Ga. 541 (468 SE2d 381) (1996).

der. Wilson attempted to run, but he fell to the ground and was fatally shot in the head.[4]

Thirty or forty-five minutes after they left the apartment, the trio returned. Render entered the apartment while Isaac and Blackburn stayed outside. Pointing to his blood-stained shirt, Render told Stacey that he "just killed somebody."

The evidence was sufficient to enable any rational trier of fact to find Isaac guilty beyond a reasonable doubt of felony murder and possession of a firearm during the commission of a felony. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Dianna Freeman was arrested for shoplifting on the eve of trial and the State made a motion in limine to prohibit defendants from cross-examining Freeman about that arrest. In so doing, the prosecutor pointed out that he had not entered into any agreement with Freeman in exchange for her testimony. The trial court granted the motion, stating that the proper way to impeach a witness is to show a conviction for a crime of moral turpitude, not an arrest. See generally *Harrison v. State*, 259 Ga. 486, 489 (384 SE2d 643) (1989). When counsel for one of Isaac's co-defendants argued that it was "premature" for the court categorically to forbid all questions about Freeman's arrest, the court told counsel to "let the court know about it before you do it." Thereafter, Isaac made no attempt to question Freeman about her arrest.

Isaac claims the trial court erred in granting the State's motion in limine. In this regard, Isaac asserts that the fact that a separate criminal charge was pending against Freeman was relevant because it reflected on Freeman's motives for testifying.

We recognize that the motives of a State's witness for testifying are always relevant in an attack upon the credibility of the witness. See *Owens v. State*, 251 Ga. 313, 316 (305 SE2d 102) (1983). What matters is whether the witness believes she would get favorable treatment if she shades her testimony. Id. Thus, it would appear that Isaac should have been permitted to cross-examine Freeman about her arrest despite the fact that no agreement was reached between the State and Freeman concerning her testimony. Id. However, any error in this regard was not preserved for two reasons. First, Isaac did not suggest below that it was important to cross-examine Freeman about her arrest to determine if she believed she had a substantial reason to please the prosecution. Second, Isaac made no effort to cross-examine Freeman about her arrest even though the trial court left the door open to do so.

---

[4] Although the evidence tends to point to Render as the triggerman, Render testified that Isaac was the shooter.

3. Christie Blackburn gave a statement to the police in which she named Isaac as the shooter. The statement was redacted to eliminate any *Bruton*[5] problems and the redacted statement was admitted into evidence. During closing argument, Isaac's counsel argued that Blackburn's statement did not point to Isaac as the shooter. The State objected and offered to make Blackburn's full statement available to the jury. The objection was overruled. Thereafter, the State moved to reopen its case, stating that Isaac's counsel deliberately lied when she argued that Blackburn did not finger Isaac as the shooter. Thereupon, Isaac's counsel moved for a mistrial, arguing that the State improperly implied "that there was other evidence out there and that I was lying." The trial court overruled both the State's motion to reopen its case, and Isaac's motion for a mistrial. Later, during the State's closing argument, Isaac again objected and moved for a mistrial when the assistant district attorney said: "[Counsel for Isaac] said nowhere in [Blackburn's] statement does she finger Isaac as being the gunman. I submit to you she knows that's a lie." Although the trial court sustained Isaac's objection, it again overruled his motion for a mistrial.

Isaac asserts the overruling of his motion for a mistrial was error. We disagree. "The decision of whether to grant a motion for mistrial lies within the sound discretion of the trial judge, and his judgment will not be disturbed on appeal absent a showing of abuse of discretion. [Cits.]" *Dick v. State*, 246 Ga. 697, 706 (273 SE2d 124) (1980). See also *Ladson v. State*, 248 Ga. 470, 475 (6) (285 SE2d 508) (1981). We find no abuse of discretion under the circumstances of this case.

4. It is asserted that the trial court violated OCGA § 17-8-57 when it ruled that Isaac's attempt to impeach a police officer was improper. This contention is without merit. The comments about which Isaac complains were made during the course of colloquy regarding evidentiary issues. Thus, OCGA § 17-8-57 is inapposite. *Bryant v. State*, 268 Ga. 664, 667 (8) (492 SE2d 868) (1997).

5. Render testified on direct examination that both he and Blackburn spoke to Isaac on the telephone while Isaac was being held in jail. He added that, following that conversation, Blackburn telephoned Isaac's probation officer. Isaac objected and moved for a mistrial, asserting Render's testimony placed his character in issue. The trial court denied the motion but offered to give a curative instruction. Isaac declined the offer and renewed his motion for a mistrial. The renewed motion was denied and Isaac enumerates error upon that ruling. We find no error. "[A] passing reference to a defendant's

---

[5] *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

record does not place his character in evidence. [Cits.]" *Johnson v. State*, 256 Ga. 604, 605 (2) (351 SE2d 623) (1987). Likewise, a passing reference to "probation" does not create reversible error. *Burton v. State*, 263 Ga. 725, 726 (2) (438 SE2d 83) (1994).

6. Isaac asserts that statements which Christie Blackburn made to Dianna Freeman were admitted erroneously against Isaac as the declaration of a co-conspirator. See OCGA § 24-3-5.[6] In this regard, Isaac asserts that the fact of conspiracy was not proved before Blackburn's statements were admitted.

> While it may generally be the better practice to require a prima facie case of conspiracy first to be made, before admitting evidence of the acts and declarations of one of the alleged conspirators, there is no inflexible rule to that effect. The trial court has some discretion as to the order in which testimony may be introduced; and if a prima facie case of conspiracy is shown from the whole evidence, the admitting of such testimony is not error. . . . If sufficient prima facie evidence of a conspiracy is introduced to authorize the admitting of evidence of acts and declarations of one of the alleged conspirators, ultimately it is for the jury to determine whether, from the whole evidence, a conspiracy has been shown; and if they find that none has been established, it is then their duty not to consider the acts and declarations of the supposed co-conspirator which has been admitted, except so far as they may affect him, if he is on trial. [Cit.]

*Coleman v. State*, 141 Ga. 731, 733-734 (82 SE 228) (1914).

The evidence adduced at trial, independent of the statement of Christie Blackburn, was sufficient to prove a conspiracy. The trial court did not err in allowing Blackburn's statement into evidence. See *Fallings v. State*, 232 Ga. 798 (1) (209 SE2d 151) (1974); *Gilstrap v. State*, 162 Ga. App. 841 (10) (292 SE2d 495) (1982).

7. Isaac asserts the trial court erred in denying his motion to sever. In this regard, Isaac argues that the number of defendants created confusion of the evidence and the law; that co-defendant Blackburn's statement would not have been admissible against him if he had been tried by himself; and that co-defendant Render's defense was highly antagonistic to his case.

"In a capital felony trial where the state waives the death penalty, the trial court has the discretion to grant a severance motion.

---

[6] This Code section reads: "After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all."

The trial court should consider the likelihood of confusion of evidence and the law, the possibility that evidence against one defendant may be considered against another defendant, and the presence of antagonistic defenses. On appeal, the defendant must show clear prejudice." *Linares v. State*, 266 Ga. 812, 815 (471 SE2d 208) (1996).

We find no abuse of discretion in the trial court's denial of Isaac's motion to sever. First, the number of defendants who were tried together was not so great as to create confusion of evidence and the law. *Owen v. State*, 266 Ga. 312, 314 (467 SE2d 325) (1996). "[T]he law applicable to each defendant was substantially the same, and there is no showing that presentation of evidence regarding [the] defendants led to confusion in the minds of the jury." *Smith v. State*, 267 Ga. 372, 373 (2) (477 SE2d 827) (1996). Second, Blackburn's statement would have been admissible against Isaac whether or not he were tried separately because it was not a confession, but the statement of a co-conspirator which was made during the pendency of the conspiracy. *Brown v. State*, 262 Ga. 223, 224 (2) (b) (416 SE2d 508) (1992). Thus, Isaac was not denied his right to confront and cross-examine Blackburn. Id.; cf. *Bruton v. United States*, supra. Moreover, Isaac made no showing that Blackburn would have been more likely to testify (and, therefore, be subject to cross-examination), if his case were severed. *Owen v. State*, supra. Finally, as to Render's defense, Isaac has not shown any prejudice to his case which might have been avoided by severing the trial. *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975).

8. Finally, Isaac asserts the trial court's charge was erroneous because (a) the charge referred to a co-defendant as an "accomplice"; (b) the instructions on aggravated assault, OCGA § 16-5-21, and possession of a firearm during the commission of a crime, OCGA § 16-11-106 (b) (1), differed from the charges set forth in the indictment; and (c) the instructions on felony murder were inadequate. We will consider these assertions seriatim.

(a) As to the purported reference to a co-defendant as an accomplice, the trial court simply charged the jury that a defendant cannot be convicted on the uncorroborated testimony of an accomplice. It did not point to either one of Isaac's co-defendants as an accomplice. It follows that there was no violation of OCGA § 17-8-57. *Sims v. State*, 266 Ga. 417, 418 (2) (467 SE2d 574) (1996), upon which Isaac relies, is inapposite. In that case, the trial court specifically referred to Sims' co-defendant as an accomplice.

(b) The indictment charged that Isaac committed an aggravated assault "by demanding property from [the victim] and by shooting him with a pistol, all with intent to rob [the victim]." The trial court instructed the jury that a person commits aggravated assault when he assaults another person with the intent "to rob or with a deadly

weapon." Isaac contends this instruction differed from the indictment and that, therefore, his due process rights were violated because he might have been convicted of committing a crime in a manner not charged in the indictment. See *Dukes v. State*, 265 Ga. 422, 423 (457 SE2d 556) (1995). In this regard, Isaac argues that, although the indictment charged him with committing aggravated assault by only robbing the victim, the trial court's instruction authorized the jury to convict him of aggravated assault by either robbing the victim or assaulting him with a deadly weapon.[7] We disagree. Isaac was indicted for assaulting the victim by shooting him with a deadly weapon in the course of a robbery. Since the shooting of the victim was a material element of the offense as set forth in the indictment, the trial court properly charged on aggravated assault with a deadly weapon.

Relying upon *Levin v. State*, 222 Ga. App. 123, 127 (473 SE2d 582) (1996), Isaac also asserts that he was denied due process of law because the trial court's instruction on OCGA § 16-11-106 (b) (1) differed from the charge in the indictment. The indictment charged Isaac with possession of a firearm "during the commission of the following felony, to wit: aggravated assault." The trial court instructed the jury that a person violates OCGA § 16-11-106 (b) (1) when he possesses a firearm "during the commission of, or the attempt to commit any crime against or involving the person of another and which crime is a felony." We find no error. Unlike *Levin*, the evidence adduced in this case did not show that it is possible for the jury to have convicted Isaac of committing the offense in a manner not charged in the indictment.

(c) Finally, we reject Isaac's contention that the trial court's charge on felony murder was incomplete because the underlying felony, aggravated assault, was not defined fully. The trial court gave a complete charge on aggravated assault. Immediately thereafter, the trial court instructed the jury on felony murder in which it incorporated its definition of aggravated assault. It concluded its charge by instructing the jury that it was not authorized to convict Isaac of felony murder unless it found him guilty beyond a reasonable doubt of the underlying felony of aggravated assault. We find no error.

*Judgment affirmed. All the Justices concur.*

---

[7] See OCGA § 16-5-21 (a) which defines aggravated assault as an assault "(1) With intent to murder, to rape, or to rob; (2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."

DECIDED OCTOBER 5, 1998.

*Elizabeth L. Markowitz,* for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Elizabeth A. Baker, Henry M. Newkirk, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth L. Jaeger, Assistant Attorney General,* for appellee.