## S07A1019. WALKER v. THE STATE.
### (653 SE2d 468)

Hunstein, Presiding Justice.

Appellant Scott Walker appeals from his conviction of malice murder and related crimes in connection with the shooting death of Edric Finney.[1] Finding no error, we affirm.

1. Viewed in the light most favorable to the verdict, the evidence reflects that on the evening of April 4, 2003, Edric Finney ran a quick errand for his girlfriend, Pamela Lyman, and returned to her apartment, which at the time was his primary residence. Lyman was at the apartment and, just before Finney entered, heard Finney at her door exchanging obscenities with another person. She then heard a single gunshot. When she entered the living room, she found her door wide open and Finney lying on the floor with a gunshot wound to the head.

On the evening in question, two off-duty Atlanta police officers who were working as security officers at Lyman's apartment building heard a loud "pop" like the sound of a firecracker. They approached Lyman's apartment and saw two young black men running from the apartment in different directions. At the apartment, the officers found Lyman crouched against the wall screaming and Finney lying in a large pool of blood. Expert testimony established that Finney died of a single close-range shotgun wound to the head.

At trial, Lyman testified that she recognized Walker and co-defendant Maurice Charleston as having both been to her apartment

---

[1] The crimes occurred on April 4, 2003. Walker and co-defendant Maurice Charleston were indicted by a Fulton County grand jury on June 20, 2003 for malice murder, felony murder, burglary, aggravated assault, and possession of a firearm during the commission of a felony. Trial was held April 4-8, 2005. On April 8, 2005, the jury found both defendants guilty on all counts, and on April 22, 2005, Walker was sentenced to life imprisonment for malice murder; twenty years concurrent for burglary; and five years consecutive for possession of a firearm during the commission of a felony. The remaining counts merged for sentencing purposes. Walker's timely filed motion for new trial, as amended, was denied on February 24, 2006. Walker filed a notice of appeal to the Court of Appeals on March 24, 2006, which ordered the case transferred to this Court on February 12, 2007. The case was docketed herein on March 28, 2007 and was orally argued on June 25, 2007.

in the days prior to Finney's murder. She testified that Walker had come to her apartment and asked her for a gun, which he claimed was in Finney's possession but belonged to "his brother," who would need it when he was released from jail. The next day, Charleston went to Lyman's apartment, also inquiring about the gun. On the day of the shooting, Walker went to Lyman's apartment and again asked Lyman about the gun and Finney's whereabouts. Finney, who overheard the conversation from inside Lyman's apartment, emerged to talk to Walker, conversed with Walker for 15-20 minutes out of Lyman's earshot, and then returned to the apartment. Lyman also testified that Finney had been hiding a gun under the mattress in her bedroom.

Around the time of the shooting, Cheryl Sewell, a neighbor of Lyman, saw Finney stop to talk to Walker and Charleston on the sidewalk outside the apartment building. Sewell saw Finney enter Lyman's apartment, followed shortly thereafter by Walker and Charleston, who opened the door without knocking. Walker had a weapon. Sewell heard someone utter "oh," followed by a single gunshot and the sound of something falling. Sewell then saw Walker and Charleston emerge from the apartment, heading in different directions.

Walker and Charleston were arrested hours after the shooting at Charleston's home. When officers arrived, they found Walker soaking wet and hiding under some mattresses. The murder weapon was never found.

The foregoing evidence was sufficient to enable a reasonable trier of fact to find Walker guilty beyond a reasonable doubt of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Walker contends that the trial court erred by refusing to grant a mistrial or give curative instructions to remedy the State's elicitation of improper character evidence on two occasions. The evidence in question pertained to co-defendant Charleston's prior incarceration. In the first instance, during direct examination of Lyman, the prosecutor was inquiring about Lyman's prior contacts with Walker and Charleston, and the following exchange occurred:

Q. When did [Charleston] come to your home?
A. I think the night he got out of jail.

Nothing further was said at this time about Charleston's incarceration. The second instance occurred slightly later in Lyman's direct examination:

Q. .... During the week [prior to the day of the shooting], were there any other occasions where Mr. Walker had come to your home looking for Mr. Finney?
A. Yes.
Q. How many, ma'am, roughly?
A. This was his second time.
Q. And on the other time when he came there, what did he say?
A. He introduced himself. He was like he was looking for my boyfriend because my boyfriend had a gun that belonged to his brother that was incarcerated at the time, and when his brother got out of jail he was going to want his gun back and that I needed to tell him that he wanted his gun back.[2]

There was no follow-up on or further mention of Charleston's incarceration.

Walker asserts that it was error not to declare a mistrial or issue curative instructions because the testimony regarding Charleston's incarceration had no probative value and improperly placed his character at issue, and thus also tainted Walker's character by implying that he associated with criminals. However, "[a] nonresponsive answer that impacts negatively on a defendant's character does not improperly place [his] character in issue." *Hansley v. State*, 267 Ga. 48, 49 (3) (472 SE2d 305) (1996). See also *Isaac v. State*, 269 Ga. 875 (5) (505 SE2d 480) (1998) (passing reference to defendant's criminal record does not place character in issue). Moreover, were we to find error in this regard, such error was harmless, as the evidence of Walker's guilt was overwhelming and thus it is highly probable that the admission of the challenged testimony did not contribute to the verdict. See *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

3. Walker next contends that the trial court erred by refusing to sever his trial from that of co-defendant Charleston because of the "indelible taint" of the evidence regarding Charleston's prior incarceration. Except where the death penalty is sought, the issue of whether to sever the trial of multiple criminal defendants is left to the discretion of the trial court. *Linares v. State*, 266 Ga. 812 (4) (471 SE2d 208) (1996). One who seeks severance bears the burden to make a clear showing of prejudice resulting from a joint trial. Id. The requisite prejudice may exist where a joint trial will create confusion of evidence and/or law; where there is a danger that evidence implicating one defendant may be considered improperly against another

---

[2] Further testimony reflected that the gun belonged to Charleston.

despite limiting instructions; or where the defendants assert defenses antagonistic to one another. Id.

Under the circumstances here presented, we find no error in the trial court's refusal to sever. The case involved a straightforward chain of events occurring over a period of a few days culminating in the shooting of a single victim. The evidence adduced at trial was not complex. Both defendants were named in every count of the indictment, and their defenses were not antagonistic to each other. Finally, as we held in Division 2, supra, the admission of evidence suggestive of Charleston's bad character, even if found to have been improper, was harmless in light of the overwhelming evidence of Walker's guilt. Thus, we find this enumeration to be without merit.

4. Finally, Walker contends that reversal is required because the State suppressed exculpatory evidence from the defense in violation of *Brady v. Maryland*.[3] The evidence in question takes the form of testimony from Jonathan Finney, the victim's brother, that he suspected that Lyman had assisted Walker and Charleston in orchestrating the confrontation that resulted in his murder. It is undisputed that Walker made a proper *Brady* motion, and the State does not dispute Walker's claim that it did not provide any information regarding Jonathan Finney's assertions to the defense in advance of his trial testimony. Walker contends that the State's failure to provide such information prejudiced his defense by preventing him from investigating Lyman's possible complicity, arguing for a lesser included crime, and/or potentially impeaching Lyman, the State's key witness in the case.

However, Walker failed to object on these grounds at trial, and thus Walker has waived his right to raise such objection on appeal. See *Jones v. State*, 258 Ga. 249 (6) (368 SE2d 313) (1988). In addition, contrary to Walker's assertions, there was no *Brady* violation. Jonathan Finney's suspicions regarding Lyman's possible involvement were nothing more than uncorroborated speculation that, even if true, would have done little to rebut or mitigate Walker's guilt. See *Wells v. State*, 237 Ga. App. 109 (1) (514 SE2d 245) (1999) (evidence of another party's complicity not necessarily exculpatory of defendant). Furthermore, the evidence in question was available to Walker at trial,[4] at which he had the opportunity to pursue the issue through further questioning of Jonathan Finney and could, had he deemed it

---

[3] *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

[4] In fact, it appears that the defense did have some knowledge regarding Jonathan Finney's suspicions *before* he testified in that regard at trial, as the trial transcript reveals that defense counsel cross-examined Lyman, who testified before Jonathan Finney, as to whether she was involved in the murder and in this context specifically alluded to Jonathan Finney's suspicions.

necessary, have sought a continuance to further investigate this theory. See *Wallin v. State*, 248 Ga. 29 (1) (279 SE2d 687) (1981) (no *Brady* violation where evidence in question made available to defendant at trial unless delay in disclosure impaired defense or deprived defendant of fair trial). Accordingly, this enumeration is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 21, 2007.

*Kimbrell & Burgar, Phillip D. Kimbrell, Marko L. Burgar,* for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Amy E. Hawkins Morelli, Assistant Attorney General,* for appellee.