A09A0418. FRAZIER v. THE STATE.
(680 SE2d 553)

DOYLE, Judge.

Following a jury trial, Allen Lee Frazier was convicted of aggravated assault[1] and possession of a firearm during the commission of certain crimes.[2] He appeals the denial of his motion for new trial, arguing that trial counsel rendered ineffective assistance because he failed to object to the admission of (1) Frazier's custodial statement made after he repeatedly invoked his right to counsel, and (2) evidence that several days before the incident, the police found Frazier outside the scene of the crime while in possession of a gun. We reverse, for reasons that follow.

Viewed in favor of the verdict,[3] the record shows that Frazier and Larry Wood ran an equipment manufacture and repair business. At some point, the two men had a disagreement regarding the business, and Frazier filed a lawsuit against Wood. On May 16, 2005, Wood was working at the warehouse at approximately 8:30 p.m., when he saw Frazier and Frazier's wife, Rhonda, drive up to the warehouse. Wood observed Frazier standing outside beside his open car door, and then, as Wood reached into a car located inside the warehouse to retrieve a flashlight, he heard multiple shots fired at him. Wood dove into the car and then heard Frazier's vehicle leave the scene. Wood (who was not injured) eventually called his wife, and she called the police.

Rhonda testified that when she returned home from work on May 16, 2005, she could tell that Frazier "had been drinking a little." The two went to a convenience store, and then Rhonda drove them to the warehouse at Frazier's request. She drove around to the back of the building and stopped, where she saw Wood standing inside the building at an open bay door. According to Rhonda, Frazier

---

[1] OCGA § 16-5-21 (a) (2).
[2] OCGA § 16-11-106 (b) (1).
[3] See *Gary v. State*, 291 Ga. App. 757 (662 SE2d 742) (2008).

stepped out of the vehicle, stood for "a few minutes," and then fired a gun. Because Frazier pointed his arm straight "up into the air" and because the casings fell directly onto her car, Rhonda assumed that he fired into the air; she did not, however, see which way Frazier pointed the gun.

After speaking to Wood, the police arrested Frazier the night of the incident and transported him to the police station for questioning, where Frazier repeatedly stated that he did not want to talk to anyone and asked to speak to his lawyer. Despite Frazier's multiple requests for his lawyer, the police had him sign a *Miranda*[4] waiver and interrogated him.

The police collected three shell casings from the ground in "the general area" where Wood said that Frazier was standing and three shell casings caught between the hood and the windshield of Rhonda's car. They also recovered a bullet between a post and a brick wall outside the building and another bullet from a machine inside the building. In addition, the police located a .40 caliber Glock handgun in a holster in Frazier's vehicle when they arrested him. The Georgia Bureau of Investigation (GBI) tested the recovered evidence and determined that the spent shell casings were ejected from the gun recovered from Frazier's car. The GBI also determined that the recovered bullets were consistent with those fired from a Glock, but investigators were unable to determine whether they were fired from Frazier's weapon.

Frazier was charged with aggravated assault upon Wood by firing a handgun in the presence of and toward Wood and with possession of a firearm during the commission of certain crimes. Trial counsel specifically waived a *Jackson-Denno*[5] hearing regarding Frazier's statement, and the State played the videotape of the custodial interview during its case-in-chief, without objection from Frazier.

At trial, Frazier testified that there had been recent vandalism in the area of the warehouse, including broken windows and graffiti. He went to the warehouse on the night of May 15 and saw Wood enter the office in the front of the building. Frazier went to the rear of the building where he heard a crash coming from a neighboring building in which some of the machinery from his business was stored. Frazier testified that "[because of] the vandalism that we had been experiencing, I just fired up in the air and I hollered, 'come out here in the road and play.' " When he received no response, Frazier tossed the gun into the car and left the scene.

---

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[5] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

The jury found Frazier guilty of both counts of the indictment. Following the verdict, he moved for a new trial, alleging that he was denied effective assistance of counsel when his lawyer failed to object to the admissibility of his custodial statement and to evidence regarding an incident the week prior to his arrest. Trial counsel testified at the hearing on the motion for new trial, and the trial court then denied the motion.

1. Frazier alleges that the trial court erred in denying his motion for new trial in light of trial counsel's failure to object to the admission of Frazier's custodial statement made after he repeatedly invoked his right to counsel. We agree.

To prevail on a claim for ineffective assistance of counsel, Frazier must demonstrate (a) that trial counsel's performance was deficient, and (b) that the deficient performance prejudiced his defense by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[6] "We will not reverse a trial court's ruling on either prong of an ineffective assistance claim unless clearly erroneous."[7]

The Fifth and Fourteenth Amendments of the United States Constitution guarantee a criminal defendant the right to counsel during questioning while in police custody.[8] The United States Supreme Court has explained that

> an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further inter-rogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.[9]

"Although a statement obtained in violation of *Miranda* may not be used in the prosecution's case-in-chief, it may be used to impeach the defendant's credibility" if the trial court finds "that the statement is voluntary under traditional due process analysis."[10]

Here, it is undisputed that Frazier repeatedly asked to speak to his lawyer during his interrogation, but the police continued to question him thereafter. Thus, as conceded by the State, Frazier's

---

[6] *Strickland v. Washington*, 466 U. S. 668, 694 (104 SC 2052, 80 LE2d 674) (1984); see *Miller v. State*, 285 Ga. 285 (676 SE2d 173) (2009).

[7] *Gary*, 291 Ga. App. at 757 (1).

[8] See *Miranda*, 384 U. S. at 470 (III); *State v. Sammons*, 283 Ga. 364, 365 (1) (659 SE2d 598) (2008).

[9] *Edwards v. Arizona*, 451 U. S. 477, 484-485 (II) (101 SC 1880, 68 LE2d 378) (1981).

[10] *Linares v. State*, 266 Ga. 812, 813 (2) (471 SE2d 208) (1996).

490

statement was obtained in violation of *Miranda*. Nevertheless, before the trial began, Frazier's trial counsel waived any objection to the admissibility of the custodial statement and specifically waived any challenge to the voluntariness of the statement. Trial counsel even noted on the record that the State intended to play the videotape of the statement during its case-in-chief, and he failed to object thereto.

At the subsequent hearing on the motion for new trial, trial counsel explained that he waived Frazier's right to object to the admission of the statement because he knew that Frazier intended to testify, and he thought the entire videotape would then be admissible for impeachment purposes. Trial counsel ultimately conceded that he could have argued that Frazier's statement was involuntary and that if the trial court agreed, the statement would not have been admissible for impeachment purposes. Trial counsel also testified that although he "didn't really consider" doing so, he could have objected to those portions of the statement that were not inconsistent with Frazier's trial testimony, and some of the inadmissible portions of the statement were "very damaging."

Pretermitting whether Frazier's statement was voluntary, it was simply not admissible during the prosecution's case-in-chief.[11] Thus, trial counsel's failure to object to the admission of the statement during the State's case-in-chief was deficient.[12] Therefore, we must consider whether Frazier has demonstrated that there is a reasonable probability that the outcome of the trial would have been different but for trial counsel's deficient performance.[13] "Reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome."[14]

In the videotape of Frazier's custodial interrogation, he appears to be intoxicated, and he repeatedly uses profanity. He initially denied that he was at the scene, but eventually, after the detective suggested that he was mad, drunk, and fired shots toward the building, Frazier replied that he "probably" did so, but that he did not recall the incident. Frazier repeatedly insisted that he did not shoot at the victim, stating that if had done so, Wood would "be a dead man"; he also asked the detective multiple times if Wood was dead.

Given the evidence presented at trial, we conclude that there is a reasonable probability that the outcome of the trial would have

---

[11] See id.
[12] See id.
[13] See *Miller*, 285 Ga. at 286.
[14] *Strickland*, 466 U. S. at 694 (III) (B).

been different absent the admission of his custodial statement — in its entirety — during the State's case-in-chief. At trial, Frazier admitted that he fired his weapon, but he testified that he fired the gun into the air as a warning to any intruders after he heard a crash. The spent shell casings recovered from the scene and Frazier's vehicle are consistent with Frazier's trial testimony. And although the police recovered bullets from the warehouse that were fired from a weapon similar to Frazier's, the GBI was unable to specifically link the bullets to Frazier's gun. Thus, the jury's verdict likely turned on the credibility of the witnesses, including Frazier. Given the inflammatory nature of Frazier's statement, we cannot conclude that its admission did not affect his credibility; certainly, admission of the statement undermines our confidence in the verdict. Accordingly, Frazier has sustained his burden of establishing that trial counsel's deficient performance prejudiced his defense, and the trial court erred in denying his motion for new trial on this basis.

2. Our holding in Division 1 renders moot Frazier's second enumeration.

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JUNE 23, 2009.

*Pate & Brody, Bernard S. Brody*, for appellant.
*Kermit N. McManus, District Attorney, John S. Helton, Assistant District Attorney*, for appellee.