## S12A0857. DRANE v. THE STATE.
### (728 SE2d 679)

THOMPSON, Justice.

A jury convicted Leonard Maurice Drane of committing murder and aggravated battery against Renee Blackmon and sentenced Drane to death for the murder. Initially on direct appeal, this Court affirmed on a number of issues and held that the evidence for the convictions and for the statutory aggravating circumstances supporting the death sentence was sufficient. See *Drane v. State*, 265 Ga. 255 (455 SE2d 27) (1995). However, this Court remanded the case for the trial court, the Superior Court of Elbert County, to conduct a hearing regarding the State's use of peremptory strikes during jury selection and regarding the trial court's exclusion during the guilt/innocence

phase of the testimony of a jail inmate to whom Drane's co-defendant, Robert David Willis, had allegedly confessed. Id. at 256-257 (2), (3). After a hearing was held in the trial court on remand, this Court affirmed Drane's convictions and death sentence. See *Drane v. State*, 271 Ga. 849 (523 SE2d 301) (1999).

Drane filed a petition for a writ of habeas corpus in the Superior Court of Butts County in November of 2000, which was denied in February of 2009. In October of 2010, in response to Drane's application for certificate of probable cause to appeal the denial of habeas relief, this Court remanded Drane's habeas case for further consideration of two issues not relevant to Drane's present appeal.

On December 8, 2010, while the proceeding on remand was still pending in the habeas court, Drane filed an extraordinary motion for a new trial in his original trial court, claiming that Willis had confessed to a parole officer to being the sole perpetrator of the murder of Renee Blackmon. After conducting a hearing, the trial court denied Drane's extraordinary motion for a new trial on September 15, 2011. Drane filed an application for discretionary appeal, which this Court granted on November 10, 2011. In light of the following discussion, we affirm the trial court's denial of Drane's extraordinary motion for a new trial.

1. On direct appeal, this Court summarized the evidence presented at Drane's trial as follows:

> Drane and co-indictee David Willis picked up Renee Blackmon on June 13, 1990, and drove her to a secluded road. Ms. Blackmon's body was found in a lake on July 1, 1990. She had been shot point-blank in the head with a shotgun and her throat had been cut at least six times. She was tied to a brake drum with a rope. After his arrest, Drane claimed that Willis had sex with the victim and shot her with a shotgun, and then cut her throat because she was still breathing. Drane said he did not know Willis was going to kill the victim and he did not participate in her killing. However, he admitted helping Willis dispose of the body, hide the gun, wash Willis's truck, and burn their clothes; and that he continued to live with Willis for three weeks until their arrest. He claimed he did so because he was afraid of Willis.
>
> At trial, a witness testified that Drane told her prior to his arrest that he and Willis "picked this [black] girl up at the Huddle House in Elberton, Georgia, and that it would be the last ride she'd ever take." He further said he "[had sex with] her so bad that she'd never have any more babies" and that

he and Willis threw her in the lake. He said the only mistake he made was to put one block on her instead of two (the body had just been discovered). Another witness testified that Drane told him he cut the victim's throat because she was still alive after Willis shot her. On the night of the murder, after Willis and Drane had disposed of the victim's body, they went to a bar and met some women. They went with the women to a trailer, where they drank beer and made comments about hating blacks. One of the women noticed that the men, who were not wearing shirts, had scratches on their chests. In the penalty phase, one of the women testified that Drane forced her to orally sodomize him at knife point that same night.

*Drane*, 271 Ga. at 849-850.

2. The statutes authorizing extraordinary motions for new trial provide no guidance regarding the specific procedures that should be applied; therefore, "the procedural requirements for such motions are the product of case law." *Dick v. State*, 248 Ga. 898, 899 (2) (287 SE2d 11) (1982). In creating the procedural requirements that should be applied by the trial courts in considering motions for new trial that are based on newly-discovered evidence, we have held that a new trial may be granted in such cases only if the defendant is able to show each of the following:

(1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.

(Citations and punctuation omitted.) *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980). We have emphasized that "[a]ll six requirements must be complied with to secure a new trial" and that the "[f]ailure to show *one* requirement is sufficient to deny a motion for a new trial." (Emphasis supplied.) Id. A trial court's ruling on a motion for a new trial "will not be reversed unless it affirmatively appears that the court abused its discretion." *Young v. State*, 269 Ga. 490, 491-492 (2) (500 SE2d 583) (1998). Furthermore, an extraordinary motion for a new trial, as contrasted with a motion for a new trial made within 30 days of a judgment, is "not favored"; consequently, "a

stricter rule is applied to an extraordinary motion for a new trial based on the ground of newly available evidence than to an ordinary motion on that ground." (Citation and punctuation omitted.) *Crowe v. State*, 265 Ga. 582, 590-591 (15) (458 SE2d 799) (1995). See OCGA § 5-5-41 (authorizing motions for new trial and extraordinary motions for new trial).

3. As we noted above, a motion for a new trial that is based on newly discovered evidence should not be granted if the movant fails to satisfy even one of the six *Timberlake* requirements. See *Timberlake*, 246 Ga. at 491 (1). As is discussed below in detail, we conclude that Drane's extraordinary motion for a new trial must fail in light of his failure to satisfy at least two of the *Timberlake* requirements bearing upon the jury's verdict of guilt and at least one of the *Timberlake* requirements bearing upon the jury's sentencing verdict.

(a) *The materiality requirement.* We begin with an analysis of the trial court's findings regarding the materiality of Drane's new evidence, which concerns the third of the *Timberlake* requirements. Id. Drane's new evidence centers on testimony by his co-defendant, Robert David Willis, who was convicted for his role in the murder of Renee Blackmon approximately a year after Drane's conviction and approximately 17 years before Drane filed his extraordinary motion for a new trial. Willis testified in the hearing held in the trial court that he revealed his current version of events for the first time in July of 2010 to his parole officer, who was preparing a report regarding Willis' suitability for parole. Willis testified that he and Drane had promised the victim drugs for sex, that he and Drane had argued with the victim because they had no drugs to give her; that he had sex with the victim in his truck but stopped because she "seemed like she was upset," that the unclothed victim walked with Drane approximately 50 yards away, and that Drane and the victim returned approximately five to ten minutes later. Willis testified further that when they returned Drane showed him a knife and asked him how he would like to have been stabbed with it. Drane argues this suggests that Willis killed the victim because he misunderstood Drane to have been claiming that the victim had been planning to stab Willis. Willis also testified that he was the one who shot the victim and the one who repeatedly cut the victim's throat, doing so in an effort to sever her head and hands to make identification of her body more difficult rather than, as the State had contended at Drane's trial, in an effort to hasten her death as she continued to make gurgling breaths.

The trial court concluded that Drane failed to satisfy the *Timberlake* requirement that the new evidence would probably have

produced a different verdict in the guilt/innocence phase[1] if it had been presented at trial. There was evidence at trial showing that Willis told Drane on the evening of the murder that he was going to murder an African-American person and that Willis had a sawed-off shotgun in his lap that was concealed with only a towel when he and Willis picked up Ms. Blackmon, which demonstrated that Drane was aware that a murder was going to be committed when he joined Willis in inviting Ms. Blackmon to leave with them in Willis' truck. Drane's version of events was before the jury in the form of his pretrial statements to investigators, but that version was belied by testimony showing that he, at various times, had admitted to various persons that he had either cut Ms. Blackmon's throat or had both shot her *and* cut her throat. In one such admission, he also stated that he had such violent sex with Ms. Blackmon that she never again would have been able to have babies and that the ride Ms. Blackmon took with him and Willis was the last ride she would ever take. Drane also laughed when this witness asked him if he had raped Ms. Blackmon, and he stated that his biggest mistake related to the events was failing to use enough weights to dispose of her body in the lake. Another witness testified that Drane had stated that he cut Ms. Blackmon's throat with a knife that Willis handed to him after Willis shot her. There was also testimony from witnesses indicating that, in the hours following the murder, both Drane and Willis appeared to have scratches on their chests and Drane had a knife in his pocket. It is also noteworthy that the testimony from Willis in Drane's extraordinary motion for a new trial is inconsistent with Drane's pretrial statements to investigators indicating that the crimes were a racially-motivated rape and murder, because Willis' new version for the first time suggests that Willis shot Ms. Blackmon only because he misunderstood Drane to have said that she had been planning to stab Willis.

The parties disagree about whether Willis' testimony at the hearing held on Drane's extraordinary motion for a new trial should be deemed suspect in light of the circumstances under which it was given. Drane argues that Willis would not have a present motive to perjure himself to benefit Drane, because Willis has already been convicted and sentenced to imprisonment for life. The State counters that Willis could be motivated to perjure himself out of a desire to have Drane freed from death row, because it is unlikely that the Board of Pardons and Paroles would grant parole to Willis while his

---

[1] As we note below, it appears that the trial court's analysis of the effect that Willis' current testimony would have had on the "verdict" refers only to the verdict in the guilt/innocence phase.

co-defendant sits on death row. This Court adds to the arguments of the parties its own observation from the evidence from Drane's trial that Willis and Drane had been very close friends in the past and that the two had agreed before their apprehension by authorities that they would work in concert to protect one another from prosecution.

Particularly in light of the discretion afforded to the trial court in its assessment of Drane's new testimony from Willis, which the trial court observed live in the courtroom, we conclude that the trial court did not abuse its discretion in finding that Willis' testimony at the hearing would not have probably produced a different result in the guilt/innocence phase if it had been presented at Drane's trial.

The evidence considered by the jury in Drane's sentencing phase included the evidence from the guilt/innocence phase discussed immediately above, and it also included evidence of the following: on the night of the murder, Drane struck an African-American man who asked him for a beer, apparently because of his race, causing the man to have to crawl out of the bar; Drane forced oral sex on a woman at knifepoint on the same night as the murder; and Drane had previously raped that same woman. Also presented for the first time in the sentencing phase was testimony from Marcus Guthrie, who had been a jail mate of both Willis and Drane at different times and who testified that Willis had stated that he had shot a woman and had also cut her throat. In Willis' current testimony, he has specifically denied making such a statement to Mr. Guthrie. Thus, if Willis' current testimony had been presented in the sentencing phase, its effect would have been minimized by the fact that it would have given the jury reason to doubt the credibility of Willis, Mr. Guthrie, or both. Our review of Willis' testimony in the hearing held on Drane's extraordinary motion for a new trial and the original trial testimony suggests that the trial court would not have abused its discretion if it had found that Willis' testimony at the hearing on Drane's extraordinary motion for a new trial would not have probably changed the jury's sentencing verdict if it had been presented at Drane's trial. However, our review of the trial court's order strongly suggests that the trial court believed that it was not authorized to consider granting a new trial solely on the issue of Drane's sentence for the murder, and the parties have not argued otherwise. We find that, to the extent that the trial court concluded that it was not empowered to grant a new trial solely on the question of Drane's sentence for the murder, it erred. See *Patillo v. State*, 258 Ga. 255, 258-262 (4) (368 SE2d 493) (1988) (addressing whether the trial court properly denied an extraordinary motion for a new trial regarding sentencing); *Horton v. State*, 249 Ga. 871, 877-878 (9) (295 SE2d 281) (1982) (same). Were there not an independently-sufficient basis for this Court to affirm the trial court's complete

denial of Drane's extraordinary motion for a new trial, this Court would remand the case to the trial court for a clear finding on the materiality of Willis' testimony with regard to the jury's sentencing verdict. However, as we discuss below, we find such an independent basis.

(b) *The due diligence requirement.* The second of the *Timberlake* requirements is that the defendant must show that he or she has been diligent in presenting his or her extraordinary motion for a new trial. Drane presented evidence from which the trial court might reasonably have concluded that Drane diligently sought Willis' testimony *at the time of his trial* but that Willis' attorney would not allow Willis to testify on Drane's behalf at Drane's trial because Willis was still facing trial and a potential death sentence himself. This excuse is the only reason Drane offers for not obtaining Willis' testimony, testimony that Drane claims he believed from the start would be helpful to him. This excuse was eliminated a year after Drane's trial, however, when Willis was convicted and received a life sentence. Drane has shown absolutely nothing to demonstrate that he took diligent steps to ascertain what testimony Willis might have been willing to give during the more than 17 years *since* Willis' trial.

We have held as follows:

> The statutes which control extraordinary motions for new trial based on newly discovered evidence require a defendant to act without delay in bringing such a motion. OCGA §§ 5-5-23 and 5-5-41 (Code Ann. §§ 70-204 and 70-303). The obvious reason for this requirement is that litigation must come to an end.

*Llewellyn v. State,* 252 Ga. 426, 428-429 (2) (314 SE2d 227) (1984) (addressing a four-year post-trial delay in seeking the deposition of a witness). Furthermore, we note that the diligence requirement ensures that cases are litigated when the evidence is more readily available to both the defendant and the State, which fosters the truth-seeking process. The trial court's order did not clearly address whether Drane had failed to present evidence excusing his extremely long delay in filing his extraordinary motion for a new trial; however, we need not remand the case for any findings of fact on that issue, because, as we have noted, Drane has presented no evidence at all in that regard. Accordingly, under the right for any reason principle, we affirm the trial court's denial of Drane's motion as to Drane's guilt, which we have already affirmed above on a separate basis, and we also affirm the denial of Drane's motion as to his sentence.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 25, 2012.

. *Cook, Noell, Tolley & Bates, Edward D. Tolley, Ronald E. Houser*, for appellant.

*Kenneth W. Mauldin, District Attorney, James V. Chafin, David T. Lock, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia Attaway Burton, Senior Assistant Attorney General, Richard Tangum, Assistant Attorney General*, for appellee.