S12A1990. CHARLESTON v. THE STATE.
(743 SE2d 1)

NAHMIAS, Justice.
Appellant Maurice Charleston and Scott Walker were indicted for malice murder and other crimes related to the shooting death of Edric Finney. Following a joint trial, a jury found both defendants

guilty on all counts. We have already affirmed Walker's convictions. See *Walker v. State*, 282 Ga. 703 (633 SE2d 468) (2007). Because the issues raised by Appellant lack merit, we now affirm his convictions as well.[1]

1. Viewed in the light most favorable to the verdict, the evidence presented at trial showed the following. See *Walker*, 282 Ga. at 703-704. On the evening of April 4, 2003, Edric Finney ran a quick errand for his girlfriend, Pamela Lyman, and then returned to her apartment, which at the time was his primary residence. Just before Finney entered, Lyman heard him at her door exchanging obscenities with another person. She then heard a single gunshot. When she went into the living room, she found her door wide open and Finney lying on the floor with a gunshot wound to the head.

Two off-duty police officers who were working as security officers at the apartment complex had heard a loud pop like the sound of a firecracker. They approached Lyman's apartment and saw two young men running from the apartment in different directions. At the apartment, the officers found Lyman crouched against the wall screaming and Finney lying in a pool of blood. Finney died of a single close-range shotgun blast to the head.

Appellant and Walker had stopped by a friend's apartment shortly before the shooting. They were riding in a gray minivan that belonged to Appellant's grandmother, and when they left, Appellant told his friend that he was taking Walker home. Shortly thereafter, however, the friend went to visit someone at the nearby apartment complex where the crimes occurred and saw the minivan parked near Lyman's apartment. The police were already there investigating the

---

[1] The crimes occurred on April 4, 2003. On June 20, 2003, Appellant and Walker were indicted by a Fulton County grand jury for malice murder, felony murder, burglary, aggravated assault, and possession of a firearm during the commission of a felony. The trial jury found them guilty on all counts on April 8, 2005. On April 22, 2005, the trial court sentenced Appellant to life in prison for malice murder, 20 concurrent years for burglary, and five consecutive years on the firearm conviction. Appellant's felony murder conviction was vacated by operation of law, and his aggravated assault conviction merged for sentencing purposes. Appellant filed a timely motion for new trial, which the trial court denied on February 24, 2006. Appellant then filed a timely notice of appeal, but on March 14, 2007, this Court dismissed the appeal after Appellant failed to file a brief even after we ordered him to do so. On March 28, 2011, the trial court granted Appellant an out-of-time appeal, and with the assistance of new counsel, he filed an amended motion for new trial on March 31, 2011, raising, among other things, allegations of ineffective assistance of trial counsel. See *Maddox v. State*, 278 Ga. 823, 827 (607 SE2d 587) (2005) ("The fact that the trial court had denied appellant's motion for new trial prior to granting the out-of-time appeal did not preclude appellant from filing a second motion for new trial raising the issue of ineffective assistance of trial counsel."). On May 17, 2011, the trial court denied the amended motion for new trial, and Appellant filed a timely notice of appeal. The appeal was docketed to the September 2012 term of this Court and submitted for decision on the briefs.

shooting. According to the friend, Walker had referred to himself and Appellant as "brothers."

At trial, Lyman testified that she recognized Appellant and Walker because both men had been to her apartment in the days before Finney's murder. Walker came to her apartment and asked her for a gun, which he claimed was in Finney's possession but belonged to "his brother," who would need it when he was released from jail. The next night, which Lyman testified was the night Appellant got out of jail, Appellant came to her apartment driving a grey minivan. He told Lyman that if Finney wanted to keep his gun, Finney should bring some money by his house. On the day of the shooting, Walker came to Lyman's apartment again to ask her about the gun and Finney's whereabouts. Finney, who overheard the conversation from inside the apartment, emerged to talk to Walker, spoke with Walker for 15-20 minutes out of Lyman's earshot, and then returned to the apartment. Lyman also testified that Finney had been hiding a gun under the mattress in her bedroom.

Around the time of the shooting, Cheryl Sewell, a neighbor of Lyman, saw Finney stop to talk to two men, whom she identified at trial as Appellant and Walker, on the sidewalk outside the apartment building. Sewell saw Finney enter Lyman's apartment, followed shortly thereafter by the two men, who opened the door without knocking. Walker had a weapon. Sewell heard someone say "oh," followed by a single gunshot and the sound of something falling. Sewell then saw the two men emerge from the apartment, heading in different directions. Before trial, Sewell had identified Walker in one photographic lineup, although she was only able to narrow a second lineup down to three possible suspects, one of whom was Appellant.

Kahiem Maddox, another neighbor, identified Appellant and Walker from photographic lineups as the men he saw outside Lyman's apartment on the night of the crimes. Maddox, who was incarcerated at the time of trial, testified reluctantly and had to be impeached with his prior statement.

Appellant and Walker were arrested at Appellant's father's house a few hours after the shooting. When police officers arrived, Appellant answered the door but would not let them in. His father, however, did let them in, and they found Walker hiding under some mattresses.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). Even if Appellant was not the shooter, his conduct with Walker before, during, and after

the shooting supports his convictions as a party to the crimes. See OCGA § 16-2-20; *Brown v. State*, 291 Ga. 887, 888 (734 SE2d 41) (2012). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. Appellant contends that the State failed to put Jonathan Finney, the victim's brother, on its witness list, as required by OCGA § 17-16-3, and that the trial court erred in not granting him a continuance before Jonathan testified. However, Appellant failed to raise this discovery objection or move for a continuance in the trial court, and he is therefore barred from raising the issue on appeal. See *Brinson v. State*, 288 Ga. 435, 437 (704 SE2d 756) (2011).

To the extent Appellant contends that the State violated his right to due process by failing to disclose to the defense before trial the substance of Jonathan's statement, see *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), the claim has no merit.[2] Walker raised the same issue in his appeal, and we held that "there was no *Brady* violation," explaining that

> Jonathan Finney's suspicions regarding Lyman's possible involvement were nothing more than uncorroborated speculation that, even if true, would have done little to rebut or mitigate Walker's guilt. Furthermore, the evidence in question was available to Walker at trial, at which he had the opportunity to pursue the issue through further questioning of Jonathan Finney and could, had he deemed it necessary, have sought a continuance to further investigate this theory.

*Walker*, 282 Ga. at 706-707 (citations omitted). This holding applies equally to Appellant's claim.

3. Appellant argues that the trial court erred in denying his motion to sever his trial from Walker's trial, but we reject this claim

---

[2] Jonathan Finney testified at trial, and told the police before trial, that on the day before the shooting, he was with his brother Edric at their mother's home when Pamela Lyman telephoned Edric. According to Jonathan, Lyman told Edric that "some boys came by in a gray minivan . . . saying they're going to kill you. Baby, please come home." Because Lyman asked Edric to come home even though he had been threatened, Jonathan thought that Lyman might have had something to do with what happened to Edric. Jonathan added, however, that he never thought Lyman was the shooter. Before Jonathan testified, Appellant and Walker cross-examined Lyman on this point, and she acknowledged that Jonathan was upset with her because he thought she had something to do with Edric's shooting, but she denied any involvement in the crimes.

for the same reasons that we held that the court did not abuse its discretion in denying Walker's motion to sever his trial from Appellant's:

> The case involved a straightforward chain of events occurring over a period of a few days culminating in the shooting of a single victim. The evidence adduced at trial was not complex. Both defendants were named in every count of the indictment, and their defenses were not antagonistic to each other.

*Walker*, 282 Ga. at 706.

4. Appellant contends that trial counsel was constitutionally ineffective in several respects.

(a) To prevail on an ineffective assistance claim, the defendant ordinarily must show both that his trial counsel performed deficiently and that prejudice resulted, meaning that but for the unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SC 2052, 80 LE2d 674) (1984). Appellant suggests, however, that his case comes within the "narrow exception" to *Strickland*'s two-part test for cases in which "there was a breakdown in the adversarial process," such that "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," allowing prejudice to be presumed. *United States v. Cronic*, 466 U. S. 648, 659, 662 (104 SC 2039, 80 LE2d 657) (1984).

The Supreme Court of the United States has emphasized the limited scope of this exception:

> When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said "if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing." Here, [the defendant's] argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points.

*Bell v. Cone*, 535 U. S. 685, 696-697 (122 SC 1843, 152 LE2d 914) (2002) (emphasis in original). Likewise, this Court has explained that for the *Cronic* "constructive denial of counsel" exception to apply, the " 'attorney's failure must be complete' and must occur throughout the

proceeding and not merely at specific points." *Turpin v. Curtis*, 278 Ga. 698, 699 (606 SE2d 244) (2004) (quoting *Bell*, 535 U. S. at 697). Appellant's assertion that his "trial counsel failed to act as an advocate on several occasions" does not meet this stringent standard. We therefore evaluate Appellant's ineffective assistance claims under the usual *Strickland* deficient performance and resulting prejudice test.

(b) Appellant contends that his trial counsel was ineffective in failing to object to Jonathan Finney's testimony on the ground that the State failed to put him on its witness list as required by OCGA § 17-16-3. In examining an ineffectiveness claim under *Strickland*, a court need not

> address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.

*Strickland*, 466 U. S. at 697.

If trial counsel had objected to Jonathan's testimony based on the discovery violation, counsel could have sought a continuance to interview Jonathan before he testified or could have moved to exclude his testimony from trial if Appellant could show both prejudice to the defense and bad faith by the State. See OCGA § 17-16-6; *Higuera-Hernandez v. State*, 289 Ga. 553, 557-558 (714 SE2d 236) (2011). However, Appellant offered no evidence at the motion for new trial hearing to show how he could have benefitted from a continuance or that the State acted in bad faith in leaving Jonathan off its witness list. Thus, Appellant failed to show that, even if his counsel had objected to the discovery violation at trial, there is a reasonable probability that the outcome of the trial would have been different. See *Lynch v. State*, 291 Ga. 555, 557-558 (731 SE2d 672) (2012).

(c) Appellant also claims that his trial counsel was ineffective in failing to object when Lyman twice referred in passing to Appellant being in prison, which, he alleges, improperly placed his character in issue. However, the record shows that while trial counsel did not make contemporaneous objections to the prison references, counsel did object after Lyman's direct examination and the trial court then ruled against Appellant on the merits of the objection. Moreover, we rejected co-defendant Walker's similar claim that the references to Appellant being in prison improperly placed Appellant's character in issue, thereby also tainting Walker's character, holding that Lyman's

non-responsive answers referring in passing to Appellant being incarcerated did not improperly place his character in issue. See *Walker*, 282 Ga. at 705.

And even if Appellant's character had been improperly put at issue, where " 'trial counsel does not testify at the motion for new trial hearing, it is extremely difficult to overcome th[e] presumption' that counsel's conduct resulted from reasonable trial strategy." *Brown v. State*, 288 Ga. 902, 908 (708 SE2d 294) (2011) (citation and punctuation omitted). Because "the decision of whether to object when a defendant's character is placed in issue is (generally) a matter of trial tactics," and because Appellant did not call trial counsel to testify at the motion for new trial hearing, he has not shown that counsel's decision was "an unreasonable tactical decision no competent attorney would have made under the same circumstances." *Green v. State*, 291 Ga. 287, 296 (728 SE2d 668) (2012) (citations and punctuation omitted).

(d) Finally, Appellant argues that trial counsel was ineffective in failing to move to suppress evidence found during the search of Appellant's father's home. Appellant asserts that a suppression motion would have succeeded because the affidavit submitted to support the search warrant incorrectly said that a witness had positively identified Appellant and Walker as suspects in the victim's shooting death, when the witness only positively identified Walker. However, when a search warrant affidavit contains incorrect information, if that information is set aside and the affidavit still contains sufficient facts to establish probable cause, the search conducted pursuant to the warrant is lawful. See *State v. Palmer*, 285 Ga. 75, 78 (673 SE2d 237) (2009). Here, even if we disregard the allegedly incorrect statement about Appellant being positively identified, the affidavit accurately stated that an eyewitness had positively identified Walker as a murder suspect and that he was apprehended in the residence the State desired to search. Based on this information alone, probable cause existed to issue the search warrant. Trial counsel's decision not to pursue a meritless motion cannot serve as the basis for an ineffective assistance of counsel claim. See *Leonard v. State*, 292 Ga. 214, 217-218 (735 SE2d 767) (2012).

5. At one point during his sentencing hearing, Walker said, "[Appellant] did not do it. I did it. He didn't know nothing were going to go down like that." Appellant contends that the trial court erred in failing to grant his motion for new trial based on this allegedly "newly discovered evidence." To obtain a new trial based on newly discovered evidence, the defendant must meet six requirements, and the failure to satisfy even one means that the motion for new trial must be denied. See *Drane v. State*, 291 Ga. 298, 300 (728 SE2d 679) (2012).

At a minimum, Appellant failed to satisfy the requirement that " 'the affidavit of the witness [providing the allegedly new evidence] should be procured or its absence accounted for.' " Id. (citation omitted). Walker's statement at his sentencing was not sworn, and Appellant did not procure an affidavit from Walker, call him as a witness at the motion for new trial hearing, or account for the inability to provide the required sworn statement. See *Davis v. State*, 283 Ga. 438, 443 (660 SE2d 354) (2008) (holding that an unsworn affidavit submitted to support a motion for new trial based on newly discovered evidence must be disregarded). Appellant thus failed to satisfy at least this requirement for obtaining a new trial based on newly discovered evidence, and the trial court therefore properly denied his motion.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 25, 2013.

*Malcolm L. H. Wells*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Paige Reese Whitaker, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General*, for appellee.