Ellington, Justice.
*852 Demarcio Williams appeals his convictions for murder and attempted armed robbery in connection with the shooting death of James Akridge.[1] Williams contends that he received ineffective assistance of counsel, that the trial court erred in having improper communication with a juror and in denying his motion for a directed verdict, and that the prosecutor improperly commented on his silence. Finding no error, we affirm.
Viewed in the light most favorable to the prosecution, the evidence presented at trial shows the following. On June 28, 2010, the victim, James Akridge, was shot in his home in Wrightsville. He called 911. A patrolman with the Johnson County sheriff's office and an officer with the Wrightsville police department responded and heard Akridge inside, calling for help. When the responding officers gained entry, they found Akridge kneeling in front of a couch and slumped across the seat cushions. Akridge, who was white, told the patrolman that he had been shot; he identified his assailant only as "a black guy." Within an hour of calling 911, Akridge died as a result of a gunshot wound to his lower back. At that point, the Georgia Bureau of Investigation took over the investigation.
During the investigation, the GBI agent interviewed John Harris, who was a long-time friend of Williams. Harris disclosed that he had asked Williams, who is black, about rumors he was hearing that Williams had shot and killed "a white guy in Wrightsville." Williams told Harris that he and Jarvis Miller, who was known as "Jughead," met with a man in Wrightsville, supposedly for a drug deal but with the intention of robbing him. Williams told Harris that the man "was reaching around," Williams got scared, and he shot the man in the back, although he did not mean to shoot him. The GBI agent asked Harris if he would try to record a conversation with Williams on the same subject, and he agreed. Several days later, Harris spoke with Williams and secretly recorded the conversation. During that conversation, Williams confirmed several details consistent with their earlier conversation. Harris testified at Williams's trial, and the recorded conversation was also played for the jury.
Antonio Surrey, an acquaintance of Williams and Harris, testified that, sometime after the murder, he gave Williams a ride. During that ride, Williams told him that he and "Jughead" had gone to a man's house to rob him and, when the victim started fighting back, Williams panicked and shot him. Surrey also had a conversation with Williams and Harris together, when Williams said that he robbed and shot the man. Another witness, Robert Jackson, testified that, while he was confined in the same jail as Williams, Williams told him that he and "Miller" went to rob the victim; Miller told Williams that the victim got a good look at their faces; Williams told the victim to put his hands behind his back and get on his knees; the *853 victim said, "please, don't kill me"; and Williams put the gun to his back and shot and killed him.
At trial, the State showed that, in the hour before Akridge called 911, he exchanged text messages with, and placed a telephone call to, numbers being used by Williams. Williams did not testify at trial.
1. Williams does not challenge the sufficiency of the evidence. Nevertheless, as is our customary practice in murder cases, we have independently reviewed the record and conclude that the evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Williams was guilty of the crimes for which he was convicted. See Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[2]
2. Williams contends he received ineffective assistance of counsel in several respects. To obtain relief based on ineffective assistance of counsel, an appellant must show both that his counsel's performance was constitutionally deficient and that this deficient performance prejudiced him. Strickland v. Washington , 466 U.S. 668, 687 (III), 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To prove deficient performance, [an appellant] must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Anthony v. State , 303 Ga. 399, 410 (9), 811 S.E.2d 399 (2018) (citation and punctuation omitted). To show prejudice, an appellant must prove that his lawyer's error was "so serious as to deprive [him] of a fair trial, a trial whose result is reliable." Strickland , 466 U.S. at 687 (III), 104 S.Ct. 2052. To that end, an appellant "must show a reasonable probability sufficient to undermine confidence in the outcome that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different." Anthony , 303 Ga. at 410 (9), 811 S.E.2d 399 (citation and punctuation omitted). "An appellant must prove both prongs of the Strickland test, and if he fails to prove one prong, it is not incumbent upon this Court to examine the other prong. In reviewing either component of the inquiry, all factual findings by the trial court will be affirmed unless clearly erroneous." Winters v. State , 305 Ga. 226, 230 (4), 824 S.E.2d 306 (2019) (citations and punctuation omitted).
(a) Williams contends that his counsel was ineffective for failing to ask that a certain juror be removed for cause. The record shows that, during voir dire, defense counsel asked the venire whether anyone had "a close relative or a friend or a son that's a policeman or a GBI agent or an FBI agent or a marshal." One prospective juror responded that her husband and the Sheriff were second cousins and that the families were near neighbors. Asked whether that would affect her ability to listen to the evidence, she responded with uncertainty.[3] Defense counsel did not move to strike the prospective juror for cause.
Williams contends that his counsel should have moved to strike the juror for cause pursuant to OCGA § 15-12-163 (b) (4), which provides, in pertinent part, that the State or the accused may object to a juror on the basis that "the juror is so near of kin to the prosecutor ... as to disqualify the juror by law from serving on the jury[.]"[4] The record does not support a finding, however, that the Sheriff had anything to do with obtaining any warrant or indictment in Williams's case[5] or could otherwise be *854 deemed "the prosecutor" in the case. Stokes v. State , 281 Ga. 825, 828-829 (2) (c), 642 S.E.2d 82 (2007) (a juror's mother who was employed as a victim/witness coordinator for the district attorney's office was not a prosecutor under OCGA § 15-12-163 (b) (4), and a juror's girlfriend who was employed as an assistant district attorney was not herself the prosecutor in the defendant's case and was not related by marriage to the juror under OCGA § 15-12-163 (b) (4) ); Bryant v. State , 270 Ga. 266, 271 (4), 507 S.E.2d 451 (1998) (a juror's son-in-law, a GBI agent who investigated the victim's murder, was not a prosecutor under OCGA § 15-12-163 (b) (4), "but rather merely an officer of the State assigned to investigate the crime for which the appellant was being tried" and "a potential witness at trial"). Therefore, a motion to strike the juror on the only basis Williams asserts would have been meritless, and the failure to make a meritless motion to strike does not constitute ineffective assistance of counsel. Veal v. State , 301 Ga. 161, 166 (2), 800 S.E.2d 325 (2017).
(b) Williams contends his counsel was ineffective for failing to object to the State's motion to strike a juror for cause. The record shows that, at the end of voir dire, a prospective juror, R. M., approached the prosecutor and defense counsel and told them that she knew the girlfriend of Williams's accomplice, Jarvis Miller, and that she knew something about the case just from knowing the girlfriend. The State moved that she be struck. Defense counsel responded, "I don't care."
Williams contends that there was no evidence that R. M. had an opinion about the case that was so definite that it could not be changed by the evidence, and, therefore, counsel should have objected to the State's motion to strike R. M. for cause. It is well settled that a defendant has no vested interest in any particular juror, but rather is entitled only to a legal and impartial jury. Willis v. State , 304 Ga. 686, 701, 820 S.E.2d 640 (2018) ; Coleman v. State , 286 Ga. 291, 296 (5), 687 S.E.2d 427 (2009) ; Bell v. State , 276 Ga. 206, 207 (2), 576 S.E.2d 876 (2003). Nothing in the record shows that any juror sworn to hear Williams's case was not a legal and impartial juror. Therefore, pretermitting any deficiency in counsel's performance, Williams has not shown that any prejudice resulted from his counsel's failure to object to the State's motion to strike the prospective juror, R. M., for cause.
(c) Williams contends his counsel was ineffective for failing to object to a private communication between the trial judge and a juror. The record shows that, after the jury was selected, the judge informed the prosecutor and defense counsel that he intended to tell a juror who was pregnant that she should just raise her hand if she needed a restroom break and that he would very briefly stop the proceedings until she returned to the courtroom. Neither counsel objected. Williams contends that, because there is no record of what the judge and the juror spoke about, this Court must assume that the communication was prejudicial to him. As we have explained, a criminal defendant's constitutional right to be present at and to see and hear all the critical proceedings which are had against him "is a fundamental right and a foundational aspect of due process of law." Ward v. State , 288 Ga. 641, 645 (4), 706 S.E.2d 430 (2011) (citation and punctuation omitted). " 'Thus, where the accused is involuntarily absent from the proceedings, the trial judge should have no communications with a juror about the case, except as to matters relating to the comfort and convenience of the jury.' " Id., quoting Pennie v. State , 271 Ga. 419, 421 (2), 520 S.E.2d 448 (1999).
Nothing in the record in this case shows that the judge made any comment to the juror outside the presence of Williams and his counsel other than telling the juror to raise her hand if she needed a restroom break, a communication relating to the comfort and convenience of the jury. Thus, pretermitting any deficiency in counsel's performance, Williams failed to carry his burden *855 of showing that defense counsel's failure to object prejudiced him. Waldrip v. State , 266 Ga. 874, 879 (2), 471 S.E.2d 857 (1996).
(d) Williams contends that his counsel was ineffective for failing to object or move for mistrial due to the prosecutor's comment on the defendant's pre-arrest silence during the State's closing argument. Specifically, he cites to the statement, "the response that you get is a combination of silence, which under the law is attached agreement [sic[6] ]." Williams contends that a bright-line rule then in effect prohibited the State from commenting on a defendant's pre-arrest silence or failure to come forward, citing Mallory v. State , 261 Ga. 625, 629-630 (5), 409 S.E.2d 839 (1991), overruled on other grounds as recognized in Clark v. State , 271 Ga. 6, 10 (5), 515 S.E.2d 155 (1999),[7] and that, therefore, his counsel's failure to object to the comment constituted deficient performance. As to the prejudice prong of the Strickland analysis, he argues that leading a jury to draw a negative inference based upon a defendant's exercise of his right against self-incrimination is "inherently prejudicial and [his trial counsel's] failure to object to such prejudice undermined confidence in the result of the proceeding[.]"
Even assuming that the rule in Mallory applies to the prosecutor's comment and that counsel performed deficiently by failing to raise an objection based on Mallory during the prosecutor's argument, we conclude that the failure to object likely did not contribute to the proceeding's outcome. The prosecutor's fleeting comment regarding Williams's failure to deny shooting Akridge came during his description of Williams's second, audio-recorded conversation with Harris about the shooting.[8] Evidence presented at trial established that Williams affirmatively admitted to Harris, in an earlier conversation, that he shot Akridge and also affirmatively admitted shooting Akridge to two other people. In addition to Williams's multiple, consistent confessions, the evidence established that Williams communicated with Akridge just before the shooting, which was consistent with his statements that he and Miller went to Akridge's home, purportedly to sell him drugs, with the intention of robbing him. In light of the strength of the evidence, we conclude that no prejudice resulted from trial counsel's failure to raise a Mallory objection to the prosecutor's argument.[9] Consequently, Williams has not shown *856 ineffective assistance of counsel in this regard. Wallace v. State , 272 Ga. 501, 504 (3) (a), 530 S.E.2d 721 (2000).
(e) Williams contends his counsel entirely failed to subject the prosecution's case to meaningful adversarial testing such that prejudice should be presumed for the purposes of his claim of ineffective assistance of counsel.[10] Specifically, Williams contends that, "for a great deal of the trial," his defense lawyer "could not hear what was happening and continually told witnesses he could not understand them." Williams argues that his counsel's inability to hear compromised his ability to advocate for his client. The record, however, does not support the assertion that any hearing difficulties pervaded the trial. Rather, Williams cited to five instances when his counsel indicated he was having trouble hearing soft-spoken witnesses.[11] In addition, Williams refers back to specific instances of allegedly deficient performance already considered herein, including counsel's saying "I don't care" in response to the State's motion to strike a juror for cause and failing to object to the prosecutor's comment on his silence. See Division 2 (b) and (d), supra.
Even if Williams's trial counsel failed to act as an advocate on the several occasions specified, Williams's assertion that his counsel entirely failed to subject the State's case to adversarial testing does not meet the stringent standard that merits a presumption of prejudice under Cronic , and therefore Strickland 's two-part test remains the appropriate standard to evaluate his claims of ineffective assistance. Wainwright v. State , 305 Ga. 63, 68 (3), 823 S.E.2d 749 (2019) ; Charleston v. State , 292 Ga. 678, 682-683 (4) (a), 743 S.E.2d 1 (2013). The record shows that, when counsel was unable to hear a particular witness, he raised the issue immediately, the judge instructed the witness to move closer to the microphone, and the preceding answer was repeated. Because the record does not show that counsel missed any testimony, Williams has not shown any prejudice in this regard. Nor has he shown any prejudice arising from the other specific instances of alleged failure to subject the State's case to adversarial testing. See Division 2 (b) and (d), supra.
Finally, even accepting for the sake of analysis that trial counsel erred in all five of the ways Williams alleges, he has not demonstrated a reasonable probability that the cumulative effect of counsel's alleged professional deficiencies affected the outcome of the proceeding. Accordingly, the trial court properly rejected Williams's ineffective assistance of counsel claim. Toomer v. State , 292 Ga. 49, 59 (4), 734 S.E.2d 333 (2012), citing Schofield v. Holsey , 281 Ga. 809, 811 n.1, 642 S.E.2d 56 (2007).
3. Williams contends that the trial court erred in having private communications with a pregnant juror and that, in the absence of any record of what the judge said to the juror, the communication is presumed to be prejudicial as a matter of law. Williams waived any objection to the judge's proposed ex parte communication with the juror by failing to object at the time, Anthony v. State , 303 Ga. 399, 407 (5), 811 S.E.2d 399 (2018).[12] In addition, as discussed in Division *857 2 (c), supra, nothing in the record shows that the judge made any comment to the juror other than telling the juror to raise her hand if she needed a restroom break. This claim of error presents no basis for relief.
4. Williams contends that the aggravated assaults charged in Counts 3 and 4, aggravated assault by shooting Akridge and by pointing the firearm at him, were not distinct, successive assaults, and, therefore, that the trial court erred in denying his motion for directed verdict on one of the counts. Although the jury found Williams guilty on both counts of aggravated assault, however, any error in the directed verdict ruling is moot, given that both aggravated assault verdicts merged with the murder conviction. Faust v. State , 302 Ga. 211, 213 n.3, 805 S.E.2d 826 (2017) ; Anderson v. State , 299 Ga. 193, 196 n.4, 787 S.E.2d 202 (2016) ; Long v. State , 287 Ga. 886, 887-888 (1), 700 S.E.2d 399 (2010).
5. Williams contends that he is entitled to a new trial because the prosecutor improperly commented on his pre-arrest silence. Williams waived this claim of error by failing to object at the time of the comment. McClarin v. State , 289 Ga. 180, 183 (3) (b), 710 S.E.2d 120 (2011). In any event, the comment was not harmful, as explained in Division 2 (d), supra.
Judgment affirmed.
All the Justices concur.

Akridge was killed on June 28, 2010. A Johnson County grand jury returned an indictment on October 27, 2010, charging Williams with malice murder, felony murder (predicated on aggravated assault), aggravated assault (shooting Akridge), aggravated assault (pointing a gun at Akridge), and criminal attempt to commit a felony (attempted armed robbery of Akridge). Following a November 7-15, 2011 trial, the jury found Williams guilty on all counts. On November 15, 2011, the trial court sentenced Williams to life imprisonment without parole for murder, 20 years for aggravated assault (pointing a gun at Akridge), to be served consecutively, and 10 years for attempted armed robbery, to be served concurrently. Trial counsel filed a motion for new trial on November 18, 2011. On November 14, 2012, the court entered an amended sentencing order, sentencing Williams to life imprisonment without parole for murder and 10 years for attempted armed robbery, to be served consecutively. The amended sentencing order indicated that the felony murder verdict and both the aggravated assault verdicts merged with the malice murder conviction, although the felony murder verdict was actually vacated as a matter of law. Stewart v. State , 299 Ga. 622, 627-628 (3), 791 S.E.2d 61 (2016). Post-conviction counsel filed amended motions for new trial on August 7, 2012, December 13, 2012, and November 16, 2015. After conducting a hearing on August 15, 2012, and a second hearing on January 5, 2016, the court denied the motion on August 10, 2017. (The trial court declined to consider a motion for new trial that Williams filed pro se on September 27, 2013, because Williams was represented by counsel, and declined to consider an amended motion for new trial filed by appellate counsel on May 26, 2017, because Williams's motion for new trial had already been heard.) Williams filed a timely notice of appeal, and this case was docketed in this Court for the term beginning in December 2018 and submitted for decision on the briefs.

We note that Williams argues that the trial court erred in denying his motion for a directed verdict as to one of the counts of aggravated assault on a basis other than the sufficiency of the evidence. See Division 4, infra.

The record shows that the juror responded, "You know, I can't say for sure ... but I don't think it would [affect my ability to listen to the evidence]. ... I honestly can't say, you bring his name up [sic], how I would feel, honestly. I mean, that's the truth. ... [W]e don't socialize, no, but being in that situation, I couldn't tell you."

At the time of Williams's trial, "so near of kin" as to disqualify a juror by law from serving on a jury was defined by former OCGA § 15-12-135 (a) as being related "by consanguinity or affinity to any party interested in the result of the case or matter within the sixth degree as computed according to the civil law."

See Spence v. State , 238 Ga. 399, 400, 233 S.E.2d 363 (1977) (under Ga. Code Ann. § 59-804, the predecessor to OCGA § 15-12-163, "[t]he general rule is that [a] prosecutor is one who instigates a prosecution by making an affidavit charging a named person with the commission of a penal offense, on which a warrant is issued or an indictment or accusation is based" (citations and punctuation omitted)).

Viewing the comment in context, it appears that the prosecutor might have said "a tacit agreement." See n.8, infra.

Williams is correct that, because he was tried before the January 1, 2013 effective date of Georgia's new Evidence Code, the bright-line rule set out in Mallory applies to his case. Wright v. State , 300 Ga. 185, 186 n.2, 794 S.E.2d 105 (2016) ; Bradford v. State , 299 Ga. 880, 887 n.7, 792 S.E.2d 684 (2016) ; Simmons v. State , 299 Ga. 370, 374 (2), 788 S.E.2d 494 (2016). We note that, in another opinion issued today, we hold that the new Evidence Code abrogated Mallory 's rule. See State v. Orr , Case No. S18G0994, --- Ga. ----, 827 S.E.2d 892, 2019 WL 1982963 (decided May 6, 2019).

The prosecutor argued that, to induce Williams to repeat his earlier confession, Harris's tactic was to tell Williams that other people were trying to say that Williams was "the only one there ... that Jarvis Miller ... didn't have a gun, and he didn't want to kill the man and all of this." The prosecutor went on,
what's the defendant's response? The defendant's response is not 'I didn't participate in that.' The defendant's response is not ... 'what are you talking about?' ... No actually, the response that you get is a combination of silence, which under the law is attached agreement [sic], [and] correction on certain points[.] ... [The defendant's response was] along the lines of, "well, they're going to tell on me. Well, if I get caught, I'm going to tell on them, because that makes no sense, them sitting there talking about all of this, because when they're telling on me, they're telling on themselves, too, because they were involved, too," talking about Mr. Miller.
(Emphasis added.)

See Wallace v. State , 272 Ga. 501, 504 (3) (a), 530 S.E.2d 721 (2000) (in light of the strength of the physical and circumstantial evidence identifying the appellant as the perpetrator of his wife's murder, the appellant failed to carry his burden of showing that prejudice resulted from his trial counsel's failure to object to the prosecutor's argument that, while the appellant did not admit anything in response to certain inquiries made by the police, the appellant's "cold expression" and physical movements during questioning indicated his guilt); Scott v. State , 305 Ga. App. 710, 717 (2) (a), 700 S.E.2d 694 (2010) ("When determining whether the State's unchallenged comments or questions about a defendant's right to remain silent prejudice that defendant, we consider a number of factors[,]" including "whether, in light of the evidence presented, there was a possibility that the State's improper comments contributed to the guilty verdict." (citation omitted)).

See Strickland , 466 U.S. at 692 (III) (B), 104 S.Ct. 2052 (identifying an "[a]ctual or constructive denial of the assistance of counsel altogether" as one of the rare instances in which prejudice is legally presumed for a Sixth Amendment claim); United States v. Cronic , 466 U.S. 648, 659 (III), 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ("[I]f [defense] counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. No specific showing of prejudice [is] required" in such a case. (citations omitted)); Charleston v. State , 292 Ga. 678, 682-683 (4) (a), 743 S.E.2d 1 (2013) (Cronic established a narrow exception to the general Strickland standard, which exception applies only when counsel's failure to subject the State's case to adversarial testing is complete and occurs throughout the proceeding, not merely at specific points).

The five instances occurred during the direct examinations of the GBI agent (twice), Harris (twice), and Jackson (once).

Cf. Carter v. State , 273 Ga. 428, 430 (5), 541 S.E.2d 366 (2001) (where the record did not show that the defendant knew of the trial court's ex parte communication with the jury, the error was not waived).