**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 4, 2026**

# In the Court of Appeals of Georgia

A25A2156. ROMINE v. THE STATE.

PIPKIN, Judge.

Appellant Wesley Labron Romine was convicted of two counts of rape, see OCGA § 16-6-1; aggravated sexual battery, see OCGA § 16-6-22.2; aggravated sodomy, see OCGA § 16-6-2 (a) (2); aggravated child molestation, see OCGA § 16-6-4 (c); sexual battery against a child under 16, see OCGA § 16-6-22.1 (d); and, three counts of child molestation, see OCGA § 16-6-4 (a), all arising out of unlawful sexual acts he committed on K. N. Appellant was sentenced to consecutive terms of life imprisonment plus an additional 63 years, and he now appeals the denial of his motion for new trial as amended; he argues on appeal, as he did below, that trial counsel was so constitutionally

ineffective that there was a constructive denial of counsel altogether. For the reasons that follow, we affirm.

While Appellant does not challenge the sufficiency of the evidence underlying his convictions, a recitation of the State's case is necessary to resolve Appellant's sole enumeration on appeal. Construed in a light most favorable to the verdicts, see *Jackson v. Virginia*, 443 U.S. 307, 319(III)(B) (99 SCt 2781, 61 LE2d 560) (1979), the evidence adduced below established as follows. During the years relevant to the charges, K. N.'s great-grandmother was married to Appellant, and, during the course of her childhood, K. N. spent considerable time at the Romines' residence in Walker County; she was often there every day during the summer school break and on most weekends during the school year. While K. N. does not know for certain when the abuse began, she testified that "the first memory [she had] of it was when [she] was four years old." According to K. N., the abuse started with Appellant touching her genital area and inserting his finger into her vagina, as well as sucking on her "chest." The abuse progressed as she aged; K. N. testified that Appellant performed anal sex on her when she eight or nine years of age, that Appellant performed oral sex on her when she was 10 or 11, and that Appellant began forcing her to engage in sexual intercourse when she was 11.

As the abuse progressed, Appellant became increasingly violent; K. N. recounted that Appellant threatened to kill her family and pets, that he choked her to unconsciousness when she attempted to fight back during one incident, and that he called her a "whore" and hit her on the head when she attempted to rebuff him on a different occasion. In total, K. N. recounted nearly a decade of sexual abuse occurring in numerous locations -- including in two different trucks, at various locations on the Romines' property, at a graveyard and campground, and at the home of various family members -- and involving hundreds of various sexual acts, including groping, digital penetration, manual stimulation, oral sex, anal sex, and intercourse. During the incidents, Appellant would either use a condom or would use a handkerchief to "clean" K. N.

Over the years, K. N. -- who was 14 years old at the time of trial -- was concerned that she might not be believed, so, after seeing a true-crime documentary, she decided to document the abuse; she subsequently took numerous photographs of Appellant in compromising positions, such as trying to pull off her pants and sucking her toes. The abuse came to light when K. N.'s father confiscated her cellular telephone as a punishment and discovered a text message recounting the sexual abuse. After the abuse

was discovered, she showed the photographs to her father, and a report was made to police the following day. K. N. underwent a forensic interview, and that interview was played for the jury. Appellant agreed to speak with investigators; his interview was recorded and later played for the jury. While he generally denied the allegations made by K. N., Appellant admitted to "wrestling" with K. N., to pulling her pants up when they fell down while they were wrestling, to massaging and rubbing K. N.'s legs, and to "biting" her toes when they were cold.

In addition to the damning photographs and testimony, the jury also heard from K. N.'s great-grandmother -- Appellant's wife of ten years -- who testified that she discovered a package of condoms located in the bedroom used by K. N. when she visited. The great-grandmother explained that she was infertile and postmenopausal and that, to her knowledge, there would be no reason that she or Appellant would have had any need of condoms. Appellant's wife also testified that she had no idea that the abuse was occurring but that, every once in a while, she heard Appellant yell at K. N., "If you don't want me to touch you, then go home and don't come back." Finally, the jury heard from two of Appellant's adult biological daughters -- both from a prior marriage -- who each testified that, as minors, they were repeatedly sexually abused by Appellant.

4

After his trial, Appellant asserted in his motion for new trial, as amended, that trial counsel rendered constitutionally ineffective assistance. Following a hearing, the trial court denied Appellant's motions. Now, on appeal, Appellant reiterates his claim of ineffectiveness. The now-familiar standard, established in *Strickland v. Washington*, 466 U. S. 688, 687-95 (104 SCt 2052, 80 LE2d 674) (1984), provides as follows:

> To prevail on a claim of ineffective assistance of counsel, a defendant generally must show not only that counsel's performance was deficient, but also that the deficient performance prejudiced the defendant—in other words, a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different.

*Wainwright v. State*, 305 Ga. 63, 68(3) (823 SE2d 749) (2019). Here, Appellant claims that trial counsel was ineffective for "failing to subject the prosecution's case to meaningful adversarial testing." In support of this position, Appellant asserts that trial counsel failed to adequately cross-examine witnesses and failed to lodge a single objection during trial. According to Appellant, "the circumstances of his case were so egregious that prejudice should be presumed because he was effectively denied effective assistance of counsel at a critical stage of his trial. See *United States v. Cronic*, 466 U.S. 648, 659 (104 SCt 2039, 80 LE2d 657) (1984)." *Wainwright*, 305 Ga. at 68 (3).

As to the "constructive denial of counsel" discussed in *Cronic*, the Georgia Supreme Court has explained as follows:

> *Cronic*'s "constructive denial of counsel" exception to the general *Strickland* standard is a "narrow" one that applies only when "'there was a breakdown in the adversarial process,' such that 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.'" *Charleston v. State*, 292 Ga. 678, 682-683 (743 SE2d 1) (2013) (quoting *Cronic*, 466 U.S. at 659, 662). Moreover, the *Cronic* exception requires an "'attorney's failure [to] be complete' and must occur throughout the proceeding and not merely at specific points." *Charleston*, 292 Ga. at 682-683 (quoting *Turpin v. Curtis*, 278 Ga. 698, 699 (606 SE2d 244) (2004)).

*Wainwright*, 305 Ga. at 68 (3). We have no trouble concluding that there was no constructive denial of counsel in this case.

Here, while the transcript reflects that trial counsel may have taken a softer approach to cross-examination, trial counsel did, in fact, cross-examine the vast majority of the State's witnesses. Trial counsel had a tough row to hoe in light of the overwhelming evidence against his client, but the transcript plainly reflects that trial counsel used cross-examination in an attempt to sow doubt as to K. N.'s credibility and to suggest that her testimony may have been influenced. To this end, trial counsel asked numerous witnesses -- including members of K. N.'s family and at least one police officer -- whether they had discussed the allegations with K. N., and trial counsel then

6

elicited testimony from the State's expert concerning the "danger" of untrained individuals questioning an alleged victim about possible sexual abuse. Additionally, trial counsel used his cross-examination of Appellant's biological children to sow doubt as to their allegations; specifically, trial counsel highlighted that, while the daughters' mother was apparently aware of the alleged abuse, she never divorced Appellant and, further, only temporarily moved with the daughters from the family residence before returning home with one of the girls.

Finally, while Appellant faults trial counsel for failing to object during trial, Appellant has failed to identify any specific testimony or evidence to which trial counsel failed or refused to object. Given trial counsel's obvious participation at trial -- including making an opening statement and a closing argument -- and his active pursuit of a defense, there is no merit to Appellant's claim that he was constructively denied counsel at trial. See *Calloway v. State*, 313 Ga. App. 708, 712-13(2) (722 SE2d 422) (2012).

Because Appellant has not established that trial counsel failed to subject the State's case to meaningful adversarial testing -- and, thus, that he was constructively denied counsel -- we do not apply the presumption of prejudice discussed in *Cronic*; instead, the second prong of *Strickland*'s two-part test remains applicable to Appellant's

claim of ineffective assistance of counsel. See *Vendrel v. State*, 318 Ga. 233, 240(1) (897 SE2d 751) (2024). Appellant, however, makes no argument as to prejudice, and the record would not support such a position. Here, even presuming that trial counsel's performance was constitutionally deficient -- which is highly doubtful -- Appellant has failed to demonstrate what, if anything, could have been elicited from the State's witnesses with a more thorough cross-examination, see *Traughber v. State*, ____ Ga. ____, ____ (2) (923 SE2d 57) (2025), and he has failed to identify what unobjected-to-evidence or testimony affected the outcome of this trial, see *Payne v. State*, 314 Ga. 322, 330(b) (877 SE2d 202) (2022). Consequently, there is no merit to Appellant's enumeration of error on appeal, and the judgment of the trial court is affirmed.

*Judgment affirmed. McFadden, P. J., and Hodges, J., concur.*